By an act of the legislature passed March 29, 1871 (chap. 213 of Laws of 1871) the defendants, by the commissioner of public works, were authorized to expend in laying pipes to extend the distribution of Croton water through the city of New York, etc., a sum not exceeding $1,500,000, and the comptroller was directed to borrow upon the bonds of the defendants such amounts as, in the judgment of the commissioner of public works, might be necessary to execute such work, not exceeding the sum before mentioned.
In pursuance of this act the defendants, by the commissioner of public works, entered into two contracts with the plaintiff, bearing date the 1st of July, 1871, for laying pipes through various streets in the city, according to specifications prepared by the chief engineer of the Croton aqueduct, and at prices fixed by him, which he testified without contradiction were just, fair and reasonable. It was admitted by the defendant, on the trial, that the plaintiff did work and furnished materials pursuant to these contracts to the amount, with interest, of $62,444.52, and it was shown by uncontroverted evidence that the work was well done, and was absolutely necessary in order to have a proper supply of water for the city, and that it was taken possession of and has been retained by the city. The proper certificates were furnished to entitle the plaintiff to draw his pay, but payment was refused by the comptroller. The sole defence insisted upon at the trial was, that the contracts had not been made after advertising for proposals, pursuant to section 104 of the charter of 1870, and on that ground alone the court dismissed the complaint.
The act of 1871, under which the contracts were made, did not require that proposals should be advertised for, but vested the commissioner of public works with the power, in behalf of the defendant, to expend the amount named in the act in making the improvements specified, and directed the comptroller *Page 306 
to borrow on the bonds of the city such amounts as should in the judgment of the commissioner be necessary to execute the works, within the limit imposed by the act. The act did not in terms direct whether the work should be done by contract or otherwise, but as it is manifest that some agency must be employed by the commissioner for the actual execution of the work, the power to make contracts for that purpose is necessarily implied.
The defence rests upon the proposition that section 104 of the charter of 1870 (Laws of 1870, chap. 137) is applicable to the work done under the act of 1871 before referred to, and to the contracts in question. That section (104) provides as follows: "All contracts to be made or let by authority of the commoncouncil for work to be done or supplies to be furnished, except printing and advertising, and all sales of personal property in the custody of the several departments or bureaus, shall be made by the appropriate heads of departments under such regulations as shall be established by ordinances of the common council. Whenever any work is necessary to be done to complete or perfect a particular job, or any supply is needful for any particular purpose, which work and job is to be undertaken or supply furnished for the corporation, and the several parts of said work or supply shall together involve the expenditure of more than $1,000, the same shall be by contract under such regulations concerning it as shall be established by ordinance of the common council, unless by a vote of three-fourths of the members elected to such board it shall be otherwise ordered; and all contracts shall be entered into by the appropriate heads of departments, and shall be founded on sealed bids or proposals made in compliance with public notice duly advertised in newspapers of the city, such notice to be published at least ten days; and all such contracts when given shall be given to the lowest bidder," etc.
The section then proceeds to provide for settling the terms of contract, security, the opening of bids, and other details, not material to the present inquiry. *Page 307 
I think that it appears very clearly from the terms of section 104, that it applies only to contracts to be made or let by authority of the common council and to work done and supplies furnished by their authority. The section provides that the contracts shall be made under such regulations as shall be established by ordinances of the common council. That when the work or supplies involve the expenditure of more than $1,000, the same shall be by contract, unless by a vote of three-fourths of the members elected to each board it shall be otherwise ordered. Clearly showing that the section refers to work ordered by the common council or done under their authority, and that the terms "all contracts" and "all such contracts," when used in the subsequent part of the section relating to advertisements for proposals, refer to contracts for work of the character mentioned in the preceding part of the section.
The act of 1871 conferred no authority upon the common council to order the work in question, or to let any contract therefor. The power was conferred directly and exclusively upon the commissioner of public works, to represent the corporation defendant in that matter. The common council had no jurisdiction over the subject and could neither initiate or stop the work, nor determine whether it should be done by contract or otherwise. The amount to be expended, and the extent of the work to be performed, were, by the act, left to the sole judgment of the commissioner of public works, and the comptroller was peremptorily required to raise on the credit of the city such amounts as in the judgment of the commissioner should be necessary to execute the work, within the limit of $1,500,000. The act of 1871 contains no provision making section 104 of the charter applicable to work ordered by the commissioner of public works pursuant to the authority conferred upon him, although it does apply to the bonds which may be issued under it all the existing laws pledging the faith of the city and providing sinking funds for the payment of the interest and redemption of the principal of the city debt. It is fair to presume that if it had been intended also *Page 308 
to incorporate in the act of 1871 the existing provisions of the charter relative to contracts made, or work done by authority of the common council, they would have been in some manner referred to. On the contrary, it appears that the legislature intended to exclude this work authorized by the act of 1871, from the jurisdiction of the common council and to place it wholly under the control of the commissioner. With the wisdom or prudence of this legislation we have nothing to do; we can only interpret the law as we find it, and this designates expressly the particular agency through which the defendants were to act, to the exclusion of all others.
In the case of The People v. Van Nort (64 Barb., 205), the commissioner of public works was, by an act passed April 26, 1870, authorized in his discretion to cause water meters of approved pattern and suitable for the purpose, to be designated by him, to be placed in all places in which water was furnished for consumption for purposes of business by the department of public works, and it was held that the action of the commissioner under this statute was not subject to the provisions of section 104 of the charter, but that it was the intention of the legislature to place the whole subject in the hands of the commissioner of public works, and that the city was liable for the price of meters ordered by the commissioner without any advertisement for proposals. The intention to place the subject of laying pipes and mains, under the act of 1871, exclusively in the hands of the commissioner, is quite as apparent as was the like intention in the case of the water meters. By the act of 1871, the commissioner of public works was the only officer of the municipality authorized to decide how much of the $1,500,000 should be expended, or should be necessary to furnish the desired supply of water. No action of the common council could control him in these respects or in the character or extent of the work to be done. He was authorized to expend the money in laying pipes to extend the distribution of Croton water through the city, and to furnish a sufficient supply to the institutions in charge of the department of public charities and corrections on Black-well's *Page 309 
island, Ward's island, and Randall's island, and in laying mains necessary to deliver water at higher elevations. The manner of accomplishing these objects was left entirely to his discretion, and the comptroller was peremptorily required to borrow such amounts as in the judgment of the commissioner might be necessary to execute said works. No other officer or body was empowered to interfere with his discretion in this respect, and no conditions were imposed upon him except that the total expenditure should not exceed $1,500,000. Without his determination of the amount to be raised no money could be procured, and the improvement could not be made. The common council was powerless in the matter. The intention to place the matter of the improvement in question under the exclusive control of the commissioner of public works is further apparent from the nature of the work and the course of legislation prior to the charter of 1870, in relation to the performance of similar work. It is very evident that the work was of a character which would, under previous laws, have been under the charge of the Croton aqueduct board. That board was created by chapter 383, of the Laws of 1849, entitled, "An act to create the Croton aqueduct department." By section 4, of that act the Croton aqueduct board thereby created was vested with the powers conferred upon the former Croton aqueduct board, by the amended charter of 1849 (Laws of 1849, chap. 383, § 15), viz., to have charge of the Croton aqueduct and structures, etc., with such other duties as might be prescribed by law; and in addition to the matters charged upon it by said charter it was charged, among other things, with the laying down of such mains and pipe as the common council might authorize. It was authorized to audit bills, and its requisitions for repairs and laying of mains and pipes and new work were directed to be paid by the comptroller to the amount appropriated by the common council, but no more.
By this act the power of ordering new work and the laying of mains and pipes and appropriating the necessary funds therefor was conferred upon the common council. But *Page 310 
various acts were passed in subsequent years changing the entire system and vesting the power in respect to such works directly in the Croton aqueduct board without the intervention of the common council. By chapter 501 of the Laws of 1853, the Croton aqueduct board were authorized, for and on behalf and in the name of the mayor, aldermen and commonalty of the city of New York, to acquire lands in said city for a new reservoir within certain limits, or so much thereof as they might deem advisable. By chapter 95 of the Laws of 1863, the same board were empowered, for and on behalf and in the name of the mayor, aldermen and commonalty of the city of New York, to acquire title to such pieces of land in another locality in said city as they in their judgment should deem necessary for a like purpose, and to construct the reservoir and such aqueducts, mains or pipes as they might deem necessary, and to purchase the machinery and materials necessary for the work at such prices and in such manner, by contract, as they might deem the public interest required. By chapter 267 of the Laws of 1864, the mayor, aldermen and commonalty, though the comptroller, was required to borrow an amount sufficient to pay for the property taken under the act of 1863 before cited, and on the estimate and requisition of the Croton aqueduct board, such further sums as might be necessary to construct equip and complete the reservoirs, not exceeding in the agregate $200,000. By a further act (chap. 285 of the Laws of 1865), the Croton aqueduct board, for and in behalf and in the name of the mayor, aldermen, and commonalty, were authorized to acquire such lands in the counties of Putnam and Westchester as, in the judgment of said board, might be necessary for reservoirs; and to construct the reservoirs, and such aqueducts, mains, or pipes, as they might deem necessary for the purposes of the act; and to purchase the materials and machinery at such prices, and in such manner, by contract, as they might deem the public interests required. The comptroller was required to borrow the money necessary to pay for the lands acquired, and, upon the requisition of the Croton aqueduct *Page 311 
board, such further means as might be necessary to complete said reservoirs, to the extent of not exceeding $300,000.
By chapter 581 of the Laws of 1865, similar powers were conferred upon the Board in reference to the construction of a branch aqueduct.
It does not admit of question that the powers conferred by the acts of 1863, 1864, and 1865, before cited, were conferred directly upon the Croton aqueduct board, and that the subjects to which those acts referred were placed beyond the jurisdiction of the common council. But a criticism is made upon a difference between the language of those acts and that of the act of 1871, in question in this case. In the former the expression is: "The Croton aqueduct board, for and in behalf, and in the name of the mayor, aldermen and commonalty," are authorized, etc., while in the latter the language is: "the mayor, aldermen and commonalty, by the commissioner of public works." The difference is one of form only, and not of substance. The meaning is the same in both cases. And that the legislature has been accustomed to use those expressions as synonymous is shown by chapter 784 of the Laws of 1869, which authorizes the mayor, aldermen and commonalty, by the Croton aqueduct board, to expend, in the completion of the work authorized by the acts before cited, at Carmansville, and in the counties of Putnam and Westchester, sums in addition to those to which the expenditures were limited by those acts. In the original acts, as has been shown, the authority was to the Croton aqueduct board for and in behalf of the corporation, and the power to increase the same expenditures is to the corporation by the Croton aqueduct board. The last mentioned act contains the same provision as the former ones, requiring the comptroller to borrow such amounts (within the limit fixed), as, in the judgment of the said Croton aqueduct board, may be necessary to complete the works, thus showing that in both acts the power was intended to be lodged in the same hands, notwithstanding the difference in the form of expression.
By the charter of 1870, the Croton aqueduct board was *Page 312 
abolished, and its powers transferred to the department of public works, of which the commissioner of public works was constituted the head. Hence, in the act of 1871, the power to make the improvements in question was conferred upon him instead of upon the Croton aqueduct board.
We think that the work in question was, by the act of 1871, placed wholly under the control of the commissioner of public works, as the successor of the Croton aqueduct board, in the same manner as like work had previously been placed under the exclusive control of that board; that the matter was not under the jurisdiction or direction of the common council, and that, therefore, section 104 of the chapter of 1870 had no application to it. The contracts were consequently valid, the work has been properly done, the city has taken possession of and retained it, and there is no legal impediment to the recovery by the plaintiff of the amount admitted to have been earned by him under his contracts.
The judgment should be reversed, and a new trial ordered, with costs to abide the event.