IN THE MATTER OF THE PETITION OF GEORGE A. ROBBINS TO VACATE AN ASSESSMENT, ETC.

*Commissioner of public works — when not required to advertise for bids, nor procure an ordinance of the common council — chap. 528 of 1873.*

The commissioner of public works, in causing the Eastern boulevard in New York to be graded and improved, in pursuance of the power conferred by chapter 528 of the Laws of 1873, was not required to have the said work done by contract after advertising for bids, nor was any ordinance of the common council necessary to enable him to act in the premises.

APPEAL from an order made ·at Special Term, vacating an assessment for regulating, grading and improving the Eastern boulevard and One Hundred and Sixteenth street, from Avenue A to Sixth avenue, in the city of New York.

The work was done under and in pursuance of chapter 528 of the Laws of 1873. The objection was that no ordinance of the common council authorizing the work had been passed, and that there had been no advertisements for bids or proposals, the work having been done by day's work and not by contract.

*W. C. Whitney*, for the city of New York, appellant.

*George E. Miller*, for the petitioner, respondent.

BRADY, J. :

The act of 1873 (chap. 528) declares that certain streets and avenues specifically named shall thereafter be known as the Eastern boulevard. It further declares that it shall be the duty of

the department of public works forthwith to lay out and establish a street or avenue, also to be known as the Eastern boulevard ; also to establish the grades of and for the part of such boulevard so designated and to be laid out, and to alter or amend the present grades, and further to lay out and establish public squares or places, of such extent as to that department should seem proper, between certain streets. It provides, therefore, for the necessary survey to accomplish these objects ; also for the laying out of the boulevard, the mapping or planning of it, the acquisition of the title to the lands required for the purpose, and for the filing of the maps or plans to be made. It further declares that the maps or plans when filed shall be final and conclusive as well in respect to the mayor, aldermen and commonalty of the city of New York as in respect to the owners and occupants of the lands within the boundary described.

It further declares that the boulevard as laid out by the department of public works shall remain under the control and management of that department as to the regulating, grading, paving, sewering, or otherwise improving and maintaining the same, in such manner as the commissioners may deem expedient, and directs the comptroller to borrow, from time to time, in the name of the mayor, aldermen and commonalty, by the issue of assessment bonds, such sums as shall be necessary to pay all the expenses incurred or to be incurred under the act.

It further declares that all acts and parts of acts in force in relation to the opening, widening, laying out, grading, regulating, sewering, and otherwise improving the streets, avenues, or roads in the city of New York, and the assessment and collection of the expenses of the same which are not inconsistent with its provisions, are applicable to it as if they were incorporated therein.

These features of the act have thus been set out to show that it was the design of the Legislature to confer upon the department of public works full and complete power to do everything that was necessary to carry out the project described.

And they seem, in order to make this certain beyond all cavil, to have incorporated in the power given, all acts not inconsistent with this design. The power to regulate, grade, improve and maintain was, it would seem, to begin, and was to be exer-

cised after the boulevard was laid out and opened, and it was to be done in such a manner as the department might deem expedient. The manner means as to the mode of doing the work to be then done, whatever it might be, which was necessary to perfect the contemplated improvement, because the other features of the improvement were to be carried out by survey ; the acquisition of title and the making and filing of the plan or map which, when filed, was to be conclusive. This view is in absolute harmony with the general design, which was to place the whole matter under the charge of the department of public works, which, as we have seen, was required to inaugurate the movement and to carry it on to completion. The powers thus conferred upon the department of public works were identified with an independent organization in regard to the public parks, created and continued by a series of laws enacted by the Legislature investing the department having control of them with authority to make contracts without an ordinance of the common council, and by virtue of its own inherent powers derived from the Legislature. (See Laws of 1857, chap. 771; Laws of 1865, chaps. 564, 565; Laws of 1866, chap. 367 and chap. 550; Laws of 1867, chap. 697; Charter of 1870, chap. 137, § 96.)

The act of 1873, *supra*, was an amendment of the act of 1870 (chap. 626), and in the latter act the same control was given to the department of public parks. The Laws of 1872 (chap. 872) transferred to the department of public works the powers previously possessed over the streets by the department of public parks, and invested the former with all the functions and powers possessed by the latter. This was reiterated and confirmed by the charter of 1873 (§ 73, chap. 335). The intentions of the Legislature to place the matter of the class of improvements mentioned under the exclusive control of the department of public works is quite apparent from the terms of the act of 1873, and the prior legislation on a kindred subject referred to and illustrated by reference to acts passed. The principles involved and applicable herein are to some extent adjudicated in the case of *Greene* v. *The Mayor* (60 N. Y., 303). Aside from this view, no good reason presents itself against the preservation of this independent organization. On the contrary, it would seem quite

clear that the system of jurisdiction in one department over certain streets and avenues in connection with the public parks should remain as better calculated to produce uniformity in improvement and government, and thus to extend the latter, as it were, beyond their own limits as originally laid out. If the Legislature designed to change this system it should be done directly, and should not be done by construction resting on the doctrine of implication.

For these reasons we think there was no necessity for an ordinance of the common council in regard to the improvement under consideration, and that the petitioner on that objection is not entitled to relief.

We think also that the board of assessors were not bound to wait for the completion of the entire work before laying an assessment, or to include the entire expense in one assessment list. The act of 1873, *supra*, contains no provision from which any proposition to the contrary emanates. The general rule which prevails in regard to these improvements is that the work contemplated may be done, in whole or in part, at such times as the department having control of it may determine. The exceptions to this rule rest in positive enactment. (*Matter of Dugro*, 50 N. Y., 513; see also *Matter of Ellsworth*, 53 id., 647; *Manice* v. *The Mayor*, 8 id., 120; *Matter of Ingraham*, 64 N. Y., 310.) In the *Matter of Dugro* the court said : " The common council " (which was then the depository of the powers referred to) " may, save as restrained by and subject to the directions of the Legislature, exercise their discretion freely as to the time, mode and manner of laying out, making, grading and paving streets, and also as to the material of which the streets shall be made, or with which they shall be paved." And this principle thus enunciated prevails here.

We do not feel called upon to consider any other objection urged by the respondents, except to say that it is valueless, and it follows, therefore, that the order appealed from should be reversed.

Present — DAVIS, P. J., BRADY and BARRETT, JJ.

Order reversed.