In the Matter of the Petition of GEORGE A. ROBBINS to Vacate an Assessment. $\begin{vmatrix} 82 & 131 \\ 108 & 372 \end{vmatrix}$

Under and by virtue of the provision of the charter of the city of New York of 1873 (§ 91, chap. 335, Laws of 1873), declaring that all contracts for work or supplies shall be made by the appropriate heads of departments, and that all work save as excepted " shall be done by contract," etc., the contract system provided for by the same section of the charter was made applicable to work thereafter inaugurated by the department of public works, including works ordered by that department in the exercise of the powers transferred to it from the department of public parks and the commissioners of Central Park.

The act of 1873 (chap. 528, Laws of 1873), requiring the department of public works to establish, lay out, grade and improve the eastern boulevard, does not except the work so authorized to be done, from said provision of the charter; but, on the contrary, by declaring applicable to the improvement, all existing laws in relation to street improvements, expressly subjects it to that provision.

Accordingly, *held*, that the doing of the work without a contract, made as

prescribed by said chapter, was a substantial error which invalidated an assessment therefor.

*Greene* v. *The Mayor* (60 N. Y. 303), distinguished.

*In re Robbins* (20 Hun, 530), reversed.

(Argued June 1, 1880 ; decided September 21, 1880.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, reversing an order of Special Term which vacated an assessment upon certain lots of the petitioner, for regulating, grading, etc., the eastern boulevard in the city of New York. (Reported below, 20 Hun, 530.)

The work was done by the department of public works, under chapter 528, Laws of 1873. No proposals were advertised for, and no contract for the work let, but it was done by day's work.

*Charles E. Miller* for appellant. The work should have been done by contract founded on sealed bids or proposals, after advertisements pursuant to section 91 of the charter of 1873, chap. 335. (*Matter of the Emigrant Industrial Sav. Bk.*, 75 N. Y. 388.) Nothing else than the entire work authorized by the legislature can constitute a local improvement, or any improvement, or justify any tax. (*People ex rel. Williams* v. *Haines*, 49 N. Y. 587.)

*Francis Lynde Stetson* for respondent. There was no obligation upon the commissioner of public works to do the work by contract. (Laws 1873, chap. 528; id., chap. 335, § 73; Laws 1870, chap. 626; Laws 1866, chap. 367, § 4; *Astor* v. *Mayor, etc.*, 62 N. Y. 576.) Municipal officers, in the absence of specific restrictions as to the mode of doing work, may pursue any mode in their discretion wisest. (*Kingsley* v. *Brooklyn*, 7 Abb. N. C. 42; *Greene* v. *The Mayor*, 60 N. Y. 303.) There was no obligation upon the board of assessors to wait for the entire work to be completed before laying an assessment, nor to include the entire expense in one assessment list. (*In the Matter of Dugro*, 50 N. Y. 513; *In the*

*Matter of Ellsworth,* 53 id. 64; *Manice* v. *The Mayor,* 8 id. 120; *Matter of Ingraham,* 64 id. 310.) The board of assessors having determined the benefit derived by the petitioner from the improvement for which the assessment was laid, it is not subject to review in this proceeding. (*Matter of McCormick,* 10 Abb. [N. S.] 234; *Matter of Eager,* 58 Barb. 560; *S. C.,* 46 N. Y. 100; *In re Ingraham,* 4 Hun, 500; *Phillips* v. *The Mayor,* 2 id. 215; *In re Anderson,* 60 N. Y. 457; *Matter of Burke,* 62 id. 228; *Matter of Astor,* id. 576, 587; *In re Ingraham,* 64 id. 311; *Matter of Bassford,* 50 id. 511; *Matter of Orphan Asylum,* 70 id. 476; *Matter of Williamson,* 3 Hun, 65.)

Rapallo, J. The first ground for vacating the assessment, alleged in the petition, is, that no contract for doing the work for the expenses of which the assessment was laid, was made in conformity with the provisions of article 16 of chapter 335 of the Laws of 1873. (Charter of 1873, § 91.)

The section referred to provides that "whenever any work is necessary to be done to complete or perfect a particular job, or any supply is needful for any particular purpose, which work and job is to be undertaken or supply furnished for the corporation, and the several parts of said work or supply shall together involve the expenditure of more than $1,000, the same shall be by contract."

The section further provides that all contracts shall be entered into by the appropriate heads of departments, and be founded on sealed bids or proposals, after advertisement.

Two cases only are specified in which such advertisement and contract may be dispensed with. They are, first, where works were in progress at the time of the passage of the act, which had been authorized by law or ordinance to be done otherwise than by contract; and secondly, where a contract should be dispensed with by a vote of three-fourths of the members elected to the common council. The case now under consideration does not fall within either of these exceptions.

The intent of the quoted provision of the charter is very

plain, and clearly was, to require that all corporation work should in future be done by contract where it involved an expenditure of over $1,000, unless by a three-fourths vote of the common council it should be otherwise ordered. And that even in cases where under existing laws the work was authorized to be done without contract, the requirement of a contract should nevertheless apply for the future, unless the work had already been begun and was in progress at the time of the passage of the charter.

The counsel for the corporation rests his claim that a contract was not necessary in the present case, on two grounds : First, he claims that by the terms of chapter 528 of the Laws of 1873, under which act the improvement was made, discretionary authority was conferred upon the department of public works to do the work without contract; and, secondly, that as successor to the powers of the commissioners of Central Park, the department of public works possessed such authority. This second point will be first examined.

The commissioners of Central Park were a commission appointed by the legislature (Laws of 1857, chap. 771), and entirely outside and independent of the corporation of New York. They were vested with the exclusive control of Central Park, and with all the powers possessed by the common council in respect to parks. Afterward, by various acts of the legislature (Laws of 1859, chap. 363; 1864, chap. 275; 1865, chaps. 564, 565; 1866, chap. 367), various streets and avenues in the upper part of the city, above Fifty-ninth street, were placed under the management and control of these commissioners with power, as to some of them, to grade, regulate and otherwise improve them; and by chapter 367 of the Laws of 1866 (§ 7), it was declared that it should be lawful for the commissioners to do all the work required to be done by them, by days work or by contract, or in such manner as they might deem expedient. At that time the charter of 1857 (chap. 446, Laws of 1857) was in force, whereby the contract system was confined to contracts made or let by authority of the common council (§ 38), and the power to make street improvements

was vested in that body.   According to the decision of this court, in *Greene* v. *The Mayor* (60 N. Y. 303), the provisions of section 38 of the charter of 1857 were not applicable to work done by the commissioners of Central Park under direct authority from the legislature, as such work was not done by authority of the common council; but nevertheless the legislature saw fit to declare, in express terms, that the commissioners, in respect to work done by their authority, should have the same power to determine whether or not it should be done by contract, which was, by the charter of 1857 (§ 38), vested in three-fourths of the common council in respect to work done by authority of that body.   In 1867 (Laws of 1867, chap. 697), the power of laying out all streets in that section of the city lying between Fifty-ninth and One Hundred and Fifty-fifth streets, and Eighth avenue and Hudson river, was vested exclusively in the commissioners of Central Park, and such streets were subjected to the control and management of the commissioners, but it was provided that the work of grading, regulating and improving them, etc., should be done by the departments of the city government on the requisition of the commissioners, and on the plan and in the manner specified by them. That act was to expire in May, 1872.   In 1870 (Laws of 1870, chap. 137) a new charter was adopted, and the executive power of the city government was vested in the mayor, and departments to be appointed by him.   The department of public works was established, and also the department of public parks (§§ 77, 94), and the control and management of all public parks and places, above Canal street, belonging to the city, were vested in the department of public parks; and by section 96 it was enacted that all provisions of law for the maintenance and government of Central Park, or granting powers and devolving duties upon the commissioners of Central Park, should apply to the department of public parks.   The powers which had by previous acts been vested in a legislative commission were thus restored to the corporation, to be exercised through one of its executive departments.   The provisions in regard to the contract system, however, were not changed, but were re-enacted,

as in the charter of 1857, and applied as before to "contracts made or let by authority of the common council" (§ 104), "unless, by a vote of three-fourths of the members of each board, it shall be otherwise ordered." The cognizance and control of opening, altering, regulating, grading, etc., streets, roads, places and avenues, were vested in the department of public works.

Pursuing the same new policy, the legislature, in 1872 (Laws of 1872, chaps. 842 and 872), transferred to the department of public works the control of the streets and avenues which had, by the acts of 1859, chap. 363; 1864, chap. 275; 1865, chaps. 564 and 565; 1866, chap. 367, and 1867, chap. 697, been placed under the control of the commissioners of Central Park; and, by section 7 of chapter 872 of Laws of 1872, all the powers possessed by the department of public parks, in respect to the boulevard, streets, avenues and roads, above Fifty-ninth street, not embraced within the limits of any park or public place, and all provisions of law conferring powers and devolving duties upon the department of public parks in relation thereto, were transferred to and conferred upon the department of public works.

The control of all the streets and avenues in the city, and of the opening, altering, regulating, grading and improving thereof was thus restored to the municipal government, to be exercised through the department of public works, and the management of the parks and public places was vested in the department of public parks.

Assuming that up to this period the department of public works held, by transfer, the authority which had been granted to the commissioners of Central Park to do all work to be done by it by contract, or days work, at its discretion, such power clearly terminated in 1873. In that year a new city charter was adopted (Laws of 1873, chap. 335) whereby the common council was, among other things, empowered to require the commissioner of public works to do any work or take any action proper for carrying out the powers of the common council. Among these powers is that of providing for "regu-

lating, grading, flagging, curbing, guttering and lighting streets, roads, places and avenues." (§ 17, subd. 10, as amended by chap. 757, Laws of 1873, § 6.) The department of public works was continued. The power of appointment of heads of departments, and all commissioners, was vested in the mayor, subject to the consent of the board of aldermen. The department of public works was given cognizance and control of opening, altering, regulating, grading, etc., streets, roads, places and avenues, and the provisions of section 7 of chapter 872 of the Laws of 1872, as to streets and avenues not embraced in any public park were, in substance, re-enacted.

By section 91 of this charter, two important changes were made in section 104 of the charter of 1870, relating to the contract system. The words "all contracts to be made or let by authority of the common council" were changed by omitting the words "by authority of the common council," so that the clause now reads : "all contracts to be made or let for work to be done, or supplies to be furnished," etc., "shall be made by the appropriate heads of departments, under such regulations as now exist or shall be established by ordinances of the common council." This material change must have been made for a purpose, and none can be so apparent as that it was made in view of the fact that the whole subject of opening, altering, grading and improving streets was placed under the charge of the department of public works, instead of the work being ordered from time to time by the common council, and the purpose of the amendment evidently was to make the contract system applicable as well to works inaugurated by that department, as to those ordered by the common council. The point upon which the case of *Greene* v. *The Mayor* turned, therefore, can no longer be taken. The next change is the introduction of a new exception to the cases in which contracts must be made, viz. : "such works *now in progress* as are authorized by law or ordinance to be done otherwise than by contract." The restriction of this exception in favor of works by law authorized to be done otherwise than by contract, to cases where such works were in progress at the time of the

passage of the act, shows conclusively that the exception was not intended to apply to other cases and that the future operation of existing laws dispensing with contracts was intended to be stopped, where the work had not been already entered upon. It cannot be supposed, in view of this language, that it was intended to confer unrestricted power upon the department of public works to dispense with the contract system in all cases of future street improvements, or to continue such power in that department, or that the transfer to the department of public works of the powers of the department of public parks, or of the commissioners of Central Park, was intended to have that effect.

Unless the power to do the work in question without contract can be found in some later statute it did not exist. This brings us to the claim made by the counsel to the corporation, that such power is contained in the act of 1873 (chap. 528), under which the improvement was made. That act was passed May 16, 1873, a short time later than the charter, and declares that certain streets and avenues shall be known as the Eastern boulevard, and authorizes the department of public works to lay out an avenue, to be also called the Eastern boulevard, from Eighty-sixth to One Hundred and Sixteenth streets, and to make certain other improvements, and the language relied upon as conferring power to dispense with contracts and do the job by days work is as follows (§ 4): "And the said Eastern boulevard as shall be laid out by this act, or by the department of public works as aforesaid, shall, immediately after the same are laid out and opened, be and remain under the control and management of the department of public works as to the regulating, grading, paving, sewering and otherwise improving and maintaining the same in such manner as the commissioners of public works may deem expedient."

It would require a very strained construction of this language to hold that it was intended thereby to exempt the improvement in question from the operation of the general provision of the charter requiring all work involving over $1,000 to be

done by contract, after advertisement for bids and proposals. The natural import of the language is that the discretion lodged in the commissioners relates to the manner in which the work shall be performed, and the character of the improvements, which are not defined in the act, and especially to the latter. The language is strictly appropriate to that subject. The commissioners are authorized to make certain specified improvements, and then a general power to otherwise improve is added, without specification, except " in such manner as the commissioners of public works may deem expedient." It would be a perversion of language to hold that by this general expression, appropriate, and almost necessary to the sense, in the connection in which it is used, the legislature intended to make this extensive improvement an exception to the general provision so recently enacted, requiring competitive bids and contracts for all works involving expenditures of over $1,000.

The counsel for the corporation seeks to sustain the interpretation claimed by him, by reference to section 7 of chapter 367 of the Laws of 1866, which authorizes the commissioners of Central Park to " do all work required to be done by them, by days work or by contract, or in such manner as they may deem expedient ; " and he argues that, from the similarity of the language, the provision of the act of 1873 (chap. 528), must have been taken from that of 1866, and consequently intended to have the same effect, and that the legislature had given a legal meaning to the term " in such manner," etc., so that when used in subsequent statutes, it must be deemed to have reference to the manner of contracting for the work. I cannot appreciate the force of this argument. If the clause was copied from the act of 1866, the significant omission of the words " by days work or by contract," would seem to lead to the conclusion that the term " manner " was not intended in the later statute to refer to the manner of employing parties to do the work. If it was, why should those words which would have obviated all doubt have been studiously omitted ? It does not seem reasonable to hold that the sentence with those words intentionally omitted, was designed to have the

same meaning as if they had been retained. And, if we are to seek for the meaning of the terms "in such manner," etc., by reference to their use in other statutes, we find them much more frequently employed with reference to the description of the improvement than to the method of contracting. For instance, in the act of 1865 (chap. 565), which empowers the commissioners of Central Park to lay out the drive or boulevard, and all that part of the city above One Hundred and Fifty-fifth street, section 8 provides that the streets shall be "regulated, graded and improved as streets or as country roads, or in such manner as the said commissioners may deem for the public interest," and may direct. And in chapter 697 of the Laws of 1867, authorizing the same commissioners to lay out streets between Fifty-ninth and One Hundred and Fifty-fifth streets, it is provided that the departments shall do the work of grading, etc., and improving on the requisition of the commissioners on the plan and in the manner specified by them. And this expression is often used where a general and indefinite power to improve is conferred, as in the present case. It does not follow that because in one statute the expression is used in a connection which shows that it refers to the manner of contracting, the same signification should be attached to it when used in another statute in a different connection. Had there been any intention to except the work in question from the operation of section 91 of the charter of 1873, and to depart in this particular case, involving an expenditure of more than ordinary magnitude, from the policy which the legislature had declared but a few days previously, it should have been clearly expressed in the act. It would be unreasonable and improper to impute such an intention on such slight grounds as are here brought to our notice.

In the very act in question (chap. 528, Laws of 1873), the department is authorized to make certain improvements in One Hundred and Tenth street, and the act expressly declares that the department may contract for the work, or if they should deem it more advisable to do the work, or any part of it, by days work, the commissioner may so do in such manner as may be

approved by the chief engineer of the Croton aqueduct depart-
ment. This enactment may not throw much light upon the
question, but it at least indicates that the draftsman of the bill
knew how to express himself when designing to confer power
to do work either by days work or by contract, and that if the
short term, "in such manner," etc., was in his judgment suffi-
cient, he would not have gone into so much detail in respect to
One Hundred and Tenth street.

The original eastern boulevard act (Laws of 1870, chap. 626),
does not aid in determining the question now under examina-
tion. It was passed before the charter of 1873, and the present
act after it. This case turns principally upon the provisions of
the charter of 1873.

The case of *Greene* v. *The Mayor* (60 N. Y. 303) arose under
the charter of 1870 and chapter 213 of the Laws of 1871, and,
as before said, turned on the language of section 104 of the
charter, which related only to contracts made or let by author-
ity of the common council, and was held not to apply to an
expenditure committed by law to a specified officer who acted
by authority direct from the legislature and independently of
the common council. The change made in 1873 obviates that
point. The act of 1871 (chap. 213) contained no provision
making other existing laws applicable to the work thereby
authorized, and there was consequently no possibility of making
the contract system applicable to the case.

I also concur in the opinion of DANIELS, J., in the case of
Alice Dempsey, that the act of 1873 (chap. 528), so far from
indicating any intention to exempt this work from the opera-
tion of section 91 of the charter, expressly subjects it to that
provision. It declares applicable to the improvement in ques-
tion, all existing laws in relation to street improvements. The
contract system, established by section 91 of the charter of
1873, is one of those existing laws, and declares, in substance,
that all work, even though previously authorized by law to be
done without contract, shall nevertheless be thereafter done by
contract, unless it was in progress at the time of the adoption
of the charter, or unless the common council, by a three-fourths

vote, authorized it to be done without contract. This work does not appear to have been in progress on the 30th of April, 1873, and no authority to the commissioner of public works to do it by days work was shown.

According to our decision in the *Matter of the Emigrant Industrial Savings Bank* (75 N. Y. 388), this was a substantial error, fatal to the assessment, and it is not necessary to examine the other objections raised.

The order of the General Term should be reversed and that of the Special Term affirmed, with costs.

All concur, except Folger, Ch. J., not voting.

Ordered accordingly.