In the Matter of the Petition of MAX WEIL to Vacate an
Assessment.

Prior to the passage of the New York city charter of 1873 (chap. 335, Laws
of 1873) under the provisions of the act of 1871 (§ 1, chap. 226, Laws of
1871), changing the grade of a portion of Ninth avenue, and directing the
commissioner of public works to proceed forthwith in such manner as
should be deemed necessary and proper to regulate and grade said ave-
nue, according to the grade so fixed, certain maps were filed; one, of
the streets intersecting Ninth avenue, the grade of which by said act of
1871 (§§ 2-4), the said commissioner was authorized to change so as to
conform to the grade of Eighth avenue, on which map new grades of
Ninth avenue appeared ; another, a map or profile of the new grade
of Ninth avenue.  No work, however, had been done upon said avenue,
in changing the grade, prior to the passage of the charter, and no contract
had been made for such work.  *Held*, that the work was not "in pro-
gress" within the meaning of the exception of such works in the provis-
ion of said charter (§ 91), requiring contracts for work not therein other-
wise provided for, to be founded on sealed proposals and let to the
lowest bidder; and, the work having been done without a contract let as
prescribed, that an assessment therefor was invalid.
Also, *held*, that the work could not be considered "in progress" because
other streets referred to in the act of 1871 had been actually graded or
the work thereon was in progress when the charter went into effect.
· Also, *held*, that the power of the commissioner of public works, under said
act of 1871, to do the work unrestricted by the contract system was not
preserved by the provision of said charter (§ 73) vesting in the depart-
ment of public works created by the charter the powers and functions
previously possessed by the department of public parks or the depart-
ment of public works.

(Argued January 18, 1881; decided January 25, 1881.)

APPEAL from order of the General Term of the Supreme
Court, in the first judicial department, made May 14, 1880,
affirming an order of Special Term, denying an application to
vacate an assessment upon certain lots of the petitioner for
regulating and grading Ninth avenue in the city of New
York, from Eighty-second to Ninety-third street.

The facts appear sufficiently in the opinion.

*Herbert A. Shipman* for appellant.  The common council
could not delegate to the commissioner of public works the dis-

cretion with which they were invested of determining in what manner the work should be done. (*In the Matter of the Emigrant Industrial Savings Bank*, 75 N. Y. 388.) The inclusion of the block between Eighty-third and Eighty-fourth street in the contract to regulate Ninth avenue clearly rendered the assessment void. (*In the Matter of Mahan*, Ct. of App.; *In the Matter of the Emigrant Industrial Savings Bank*, 75 N. Y. 388; *Brady* v. *The Mayor*, 22 id.) The work for which the assessment was laid could lawfully be done only by a contract founded on sealed bids or proposals made in compliance with public notice, duly advertised, as provided by section 91 of the charter of 1873 (chap. 335, Laws of 1873). (*In the Matter of the Emigrant Industrial Savings Bank*, 75 N. Y. 388, 390, 396; *In the Matter of Mahan*, decided by Ct. of App. 1880; *In the Matter of Manhattan Savings Institution*, Ct. of App., Sept. 21, 1880.) The words "in such manner as by him shall be deemed necessary and proper" referred only to the character of the work, its constituent parts, material, physical or mechanical characteristics, and not to the manner of employing persons to do the work, nor to the manner of procuring the supplies or materials necessary for it. (*In the Matter of Robbins*, Ct. of App., Sept. 21, 1880; *Rogers* v. *Bradshaw*, 20 Johns. 735, 744; *Rexford* v. *Knight*, 15 Barb. 627, 642, 643.) The necessity of inviting bids for this work was not obviated by including it in a contract with work which might be done without inviting bids. (*In the Matter of Eager*, 46 N. Y. 100.) All contracts, except as to works in progress when the charter of 1873 was passed, must be let at public letting, as provided in section 91 of that charter. (*In the Matter of the Emigrant Industrial Savings Bank*, 75 N. Y. 390.) The action of the commissioner of public works in entering into a contract for this work at prices grossly in excess of the fair market value and of what he was paying for the same character of work where proposals had been received, founded upon advertisements, as required by law, was a fraud upon the property owners. (*In the Matter of Mead*, 74 N. Y. 216; *In the Matter of Raymond*, General Term; *Harrison* v. *Glover*, 72 N.

Y. 451, 454; *Clicot's Champagne*, 3 Wall. 143.; *Lush* v.
*Druse*, 4 Wend. 313; *In the Matter of Mahan*, Ct. of App.,
not reported; *In the Matter of Robbins*, 82 N. Y. 131; *In
the Matter of Manhattan Savings Institution*, id. 142.)

*A. J. Vanderpoel* for respondent.   The act chapter 226
of the Laws of 1871 made it imperative on the commissioner of
public works to proceed forthwith with the regulating and grad-
ing of Ninth avenue, and gave full power to do this work by
days' work, by contract or in any other way he pleased. (*In
re Rotschild*, decided at Special Term, November 25, 1879,
and affirmed at the General Term in January, 1880; *Greene* v.
*The Mayor*, 60 N. Y. 303; *Parr* v. *Village of Greenbush*, 72
id. 463; *Kingsley* v. *Brooklyn*, 78 id. 200.) The power of
the commissioner of public works, under chapter 226 of 1871,
to do the work without the restrictions of the contract system,
was expressly saved to him by the charter of 1873. (*Greene*
v. *The Mayor*, 60 N. Y. 303; *Kingsley* v. *Brooklyn*, 78 id.
200; *In re Rotschild, supra;* Potter's Dwarris, 154; *People*
v. *Mayor*, 32 Barb. 35; *Ellis* v. *Mayor*, 1 Daly, 103; *Haugh-
wout* v. *Mayor*, 2 Keyes, 422.) The commissioner of public
works, in doing this work, acted under the provisions of chapter
226 of Laws of 1871, and possessing lawfully the power to do it,
the presumption is that he acted lawfully. (*In re Hebrew
Ben. Orphan Asylum*, 70 N. Y. 476; *In re Bassford*, 50 id.
512; *In re Williamson*, 3 Hun, 65–68; *In re N. Y. P. E. Pub.
School*, 47 N. Y. 556; *State* v. *Jersey City*, 3 Dutch. 493;
*Davis* v. *Bruce*, 82 Ill. 542.) The board of assessors had
power to lay the assessment for the expense incurred under
the contract with Tracey. (*Newbury Turnpike Co.* v. *Miller*,
5 Johns. Ch. 113; Potter's Dwarris on Statutes, p. 220, note 27;
*In re Williamson*, 3 Hun, 65–68; *Bigelow* v. *The City of
Boston*, 120 Mass. 326; *Jordan Ditching and Draining Asso-
ciation* v. *Wagoner*, 33 Ind. 50; *State* v. *Jersey City*, 3 Dutch.
493; *In re Ingraham*, 64 N. Y. 310; *In re Eager*, 46 id. 100;
*In re McCormack*, 10 Abb. [N. S.] 234.)

FINCH, J. The petitioner in this case seeks to set aside an assessment upon certain lots in the city of New York owned by him, which was imposed for regulating Ninth avenue from Eighty-third to Ninety-second street. The ground of substantial error alleged is, that no contract for doing the work, or any part thereof, for the expense of which the assessment was laid, was made in conformity with the provisions of article 16 of chapter 335 of the Laws of 1873, upon advertisement, or founded on sealed bids or proposals, nor were any bids made for doing said work, or any part thereof, or any competition had therefor. The substantial fact involved in the allegation is admitted. The contract for the work was of a character known as a "special contract," which was awarded without advertising for proposals, and upon a competition solely between a few designated and selected individuals.

The right to make the contract in this manner is claimed by the petitioner to be prohibited by the charter of 1873, and is defended by the corporation counsel upon several grounds.

The provision of the charter (Laws of 1873, chap. 335, § 91) which required contracts to be let to the lowest bidder, upon public and open competition, contains a provision excepting from the operation of the general requirement "such works now in progress as are authorized by law or ordinance to be done otherwise than by contract."

It is claimed that the work for which the disputed assessment was made was within this exception and upon the following state of facts:

In 1871 the legislature passed an act (Laws of 1871, chap. 226) changing the grade of Ninth avenue between Eighty-fourth and Ninety-second streets, and directing the commissioner of public works to proceed forthwith, in such manner as by him should be deemed necessary and proper, to regulate and grade said avenue according to the grade so established. These provisions were contained in section 1 of the act, which section by its terms fixed the grade of Ninth avenue between the specified termini, and left nothing in that respect to be ascertained or determined by the city authorities. The succeeding

three sections of the act authorized the commissioner of pub-
lic works to change the grades, between Eighth and Tenth ave-
nues, of the streets intersecting Ninth avenue, so as to make
the grades conform to that of Eighth avenue; to alter and fix
the grades of the streets between Seventh and Eighth avenues
intersecting such avenues between One Hundred and Tenth
and One Hundred and Twenty-second streets, so as to conform
to the grade of such avenues; and to fix and establish the
grades of the streets and avenues west of Eleventh avenue and
north of West Thirty-third street up to West Fifty-fifth
street, those west of Tenth avenue and West street between
West Eleventh and West Fourteenth streets, and those extend-
ing to the East river north of East Fourteenth street and east
of First avenue.	As to all these changes of grade, except that
of Ninth avenue, a discretion and power of determination was
lodged in the commissioner of public works, and he was there-
fore required, when his conclusion was reached and the grades
to be fixed by him were finally determined, to make and file a
map or profile of such grades in the office of the comptroller,
and a duplicate in the office of the commissioner of public
works.	Section 1 of the act contained no such requirement,
plainly for the reason that the grade of Ninth avenue was fixed
and determined by the act itself.	The charter of 1873 was
passed April 30th of that year.	No work was done before that
date upon Ninth avenue with a view to the change of grade,
nor was any contract made or executed for such work.	What
is claimed to have been done, and all that is claimed to have
been done before the charter of 1873 was the filing of certain
maps.	The first one put in evidence was denominated "plan
showing the grades of Ninth avenue from Eighty-third to
Ninety-second streets, as altered, amended and established by
the commissioner of public works, under and by authority of
chapter 226 of Laws of 1871."	As the new grade of Ninth
avenue was fixed by the law itself, and the commissioner of
public works had no power or authority to alter, amend or es-
tablish the fixed grade, the title of the map or plan was erro-
neous.	This more distinctly appears from the certificate of

the commissioner himself, who certifies that it is a map and profile of the grade of the streets intersecting Ninth avenue. This, therefore, was a map and profile of the streets referred to in the second section of the act, and required to be made by that section to show the grades fixed by the commissioner. It was conceded that on this map the new grade of Ninth avenue was shown, but that was plainly incidental to the main purpose of the map, and not a profile made for the specific work of Ninth avenue. The second map introduced was, however, a profile of the grade of Ninth avenue. The witness gives its date as July, 1873, or after the charter of that year was enacted. This is probably a mistake as the legend on the face of the map bears date a year earlier, or July, 1872. The map or profile showed an estimate of the amount of filling to be done, and the natural inference is, that surveys of Ninth avenue had been made with reference to the change of grade, and to ascertain the amount of work to be done. These engineering expenses, by section 6 of the act of 1871, were to be paid out of the general tax, and not assessed upon the property benefited by the specific improvement.

We do not think, on this state of facts, that the proposed or intended change of grade of Ninth avenue was one of the "works in progress" excepted by section 91 of the charter of 1873 from the operation of the contract system thereby organized and required. The reason for the exception was plain. A new and general system for doing the work of the city was inaugurated, entirely inconsistent with modes previously in operation. To attempt its application in cases where those modes were already adopted, and in process of execution, and the work under them was in progress, would of necessity create confusion, and render uncertain and complicated the rights both of the city and its contractors. Such cases were therefore exempted from the operation of the general rule. But no possible reason can be assigned for extending the exemption to cases where no contract had been made, and no actual work was begun, merely because some useful or even necessary preliminaries had been accomplished. The most

which can be said is that certain preparations for the commence-
ment of the work had been made, but the work itself, the enter-
prise, so to speak, of changing the grade was not begun and
was not in progress. If by possibility, in some very broad
and general sense, the making of surveys and a profile, and
estimates of the filling to be supplied, might be held to justify
a statement that the work was in progress, it is yet very clear
to us that the phrase was not used in the charter of 1873 in
any such broad and general sense, but was intended to be de-
scriptive of cases where the city was already committed to
other modes of doing the work, and could not change the sys-
tem without complication or confusion. No such difficulty
existed here. It was entirely possible to change the grade of
Ninth avenue by contracts let as required by the charter, with-
out in the slightest degree coming in collision with any differ-
ent system, or any conflicting rights or duties. (*In re Alicia
Dempsey*, per DANIELS, J.)

But it is further claimed that this was a work in progress,
because, before the charter of 1873 went into operation, other
of the streets referred to in the act of 1871 had been actually
graded, or the work was in process of execution. The argu-
ment is that the act of 1871 contemplated one general scheme
of improvement, and the commencement of any part of the
work, on any street described in the act, made it a work in
progress as to all the streets and the entire area of improve-
ment. But we think this view of the case is unsound. The
act provided, not so much for one general improvement as for
a series of separate improvements. As matter of fact, the evi-
dence shows that the several streets were regulated separately,
each by its own contractor, as a distinct work, and followed by
its own separate and distinct assessment. The suggestion al-
ready made is again applicable, that no possible reason exists
why, as to streets untouched, and remaining to be graded un-
der separate and distinct contracts, the system of the charter
should not apply. We are therefore of opinion that the grad-
ing of Ninth avenue was not a work in progress within the
meaning of the exception in the charter.

It is next claimed, on behalf of the city, that the power of the commissioner of public works, under chapter 266 of Laws of 1871, to do the work without the restrictions of the contract system, was expressly saved to him by the charter of 1873. The language relied upon is contained in section 73. The obvious intent and effect of that section was to vest in the department of public works, created by the act of 1873, all the powers and functions then or previously possessed by the department of public parks or that of public works. It is therefore insisted that, since by the act of 1871 power was conferred upon the commissioner of public works to grade and regulate Ninth avenue "in such manner as by him shall be deemed necessary and proper," it follows that the department of public works, before the charter of 1873, possessed the power of regulating and grading Ninth avenue by days' work, or special contract, and in the discretion of the commissioner; that such power was transferred to the new department by force of section 73 of the charter; and that the contract system provided for in section 91 worked no change in the power so transferred, because it was only made applicable to contracts, except as in the charter was "otherwise provided." The question thus raised was substantially considered and decided in the case of *Robbins* (82 N. Y. 131). An act, passed May 16, 1873, authorized the department of public works to lay out the Eastern boulevard, and make certain other improvements, and regulate, grade and maintain the same "in such manner as the commissioner of public works may deem expedient." We held that this language did not save the work to be done from the operation of the contract system, and that the phrase "in such manner" related only to the manner in which the work itself should be performed and the character of the improvement. It is quite true that in the case then before the court the discretion of the commissioner as to the character and extent of the work to be done was much wider than in the present, since here the grade was dictated by the act, but enough of discretion remained to the commissioner as to the mode of doing the work itself to make our previous construc-

tion entirely applicable. While the language of the alleged power is not identical in the two cases, it is the same in substance and effect. "As he may deem expedient," and "as he may deem necessary and proper" are synonymous expressions. The construction, therefore, in *In re Robbins* must be the same here, and excludes the theory that by the act of 1871 a discretion uncontrolled was given to the commissioner to dictate for himself whether the contract for the work should be special or general, by the day or by the job, unless such construction is modified by the then existent legislation. But in that event we held also in the *Robbins Case*, upon a very careful examination of the complicated and confused legislation relating to the city by Judge RAPALLO, that the transfer of the powers of the department of public parks, and of the succeeding department of public works, to the new department of the same name, was not intended to free the latter from the effect of section 91 and the operation of the contract system. We there said that it was not intended to confer unrestricted power upon the department of public works to dispense with the contract system in all cases of future street improvements, or to continue such power in that department, or that the transfer to the department of public works of the powers of the department of public parks or of the commissioners of Central park was intended to have that effect. For the foregoing reasons, therefore, we are of opinion that the work in question was not saved from the operation of section 91 of the charter of 1873 by the other provisions of the charter.

Much discussion was had on the argument over the question whether the work of grading Ninth avenue was done under the authority of the act of 1871 or that of an ordinance of the common council, passed December 23, 1873, directing the regulating of Ninth avenue between Eighty-*third* and Ninety-second streets. The southern terminus, under the act, was Eighty-fourth street, so that the ordinance included an additional block. The contract made was for the regulating of Ninth avenue from Eighty-*third* to Ninety-second street, and the assessment following included lots on the north side of

Eighty-third street. It is not denied that the ordinance furnished no competent authority for the special contracts actually made and the assessment based thereon (*In re Emigrant Industrial Savings Bank*, 75 N. Y. 388), but the city relies wholly upon the authority of the act of 1871.

The conclusion we have reached, that, even on that basis, no authority existed to do the work by special contract in the manner actually adopted, renders it unnecessary to debate the further question raised by the petitioner. In either event, whether it be the statute or the ordinance which is relied upon, the assessment was erroneous.

The orders of the General Term and of the Special Term should be reversed, with costs, and the assessment vacated.

All concur, except MILLER, J., not voting.

Ordered accordingly.