In the Matter of the Petition of William Blodgett and others to Vacate an Assessment.

The provision of the charter of New York city of 1873 (§ 91, chap. 335, Laws of 1873) requiring any work undertaken for the city, involving an expenditure of over $1,000, to be let by contract in the manner specified, was intended as a general rule governing the action of all officers and departments of the city government.

The provision of said charter (§ 73) vesting in the department of public works, created by the charter, the powers and functions previously possessed by the old department of public works and by the department of public parks did not preserve to the newly organized department the power

formerly possessed by the department of public parks to do the work they were authorized to perform in their discretion by day's work instead of by contract.

Prior to the passage of said charter, a plan for the drainage of the "Boulevard" throughout its whole extent had been prepared and approved by the proper authorities. The sewers were divided into five sections or districts, each independent of and entirely disconnected with the others, having a different outlet and capable of being separately constructed without regard to the others. A separate assessment was made for the work in each section. When the charter was adopted some work had been done upon one of the sections. *Held*, that this was not work "in progress" upon all the sections within the meaning of the exception in said provision in regard to contracts, exempting such work from the contract system ; that the sewerage of the Boulevard was not an entire work but a series of separate improvements, and that, therefore, an assessment for constructing sewers in one of the sections whereon no work had been done prior to the charter, the improvement having been done by day's work not by contract, was illegal and void.

(Argued December 12, 1882 ; decided January 16, 1883.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, made at the October term, 1882, reversing an order of Special Term vacating an assessment.

The nature of the assessment and the material facts are stated in the opinion.

*Charles E. Miller* for appellants. If this work was in progress at the time of the passage of the charter of 1873, no valid objection exists to the assessment. If not, then, in the absence of a contract founded on sealed bids, the assessment is invalid. (*Matter Em. Ind. Savgs. B'k*, 75 N. Y. 388.) This was not a work in progress when the charter of 1873 was passed. (*Matter of Weil*, 83 N. Y. 542.) The board of assessors and of revision had no power to vacate or set aside the assessment because of want of power in the corporation to impose any assessment whatever. (*Matter of Lange*, 85 N. Y. 307.)

*D. J. Dean* for respondent. The work in question is clearly within the exception of "such works now in progress as are

authorized by law or ordinance to be done otherwise than by contract." (*Easton* v. *Pickersgill*, 55 N. Y. 314; *Troup* v. *Haight*, Hopkins, 239–268; *People* v. *Dayton*, 55 N. Y.; Story on the Constitution, § 408; Cooley on Const. Lim. 67; *Union Ins. Co.* v. *Hoge*, 21 How. [U. S.] 65; *In re Female Academy of the Sacred Heart*, 6 Hun, 109, 113, 114; *Brown* v. *The Mayor*, 55 How. 9.) The work in question is one of the works which, by the provisions of the charter of 1873, are authorized to be done otherwise than in the manner provided by section 91. (*Greene* v. *Mayor*, 60 N. Y. 603; *Kingsley* v. *Mayor*, 7 Abb. N. C. 42; Laws 1866, chap. 367, § 7, p. 822; Laws of 1870, chap. 137, §§ 94–96; chap. 383, §§ 15, 16; Laws of 1872, chap. 872, § 7, p. 2134; *People* v. *Mayor*, 32 Barb. 35; *Ellis* v. *Mayor*, 1 Daly, 103; *Eaton* v. *Pickersgill*, 55 N. Y. 314.) The policy of the legislature, evinced by a long series of acts, in relation to the improvement of the upper part of the city, has been to allow the peculiar improvements therein directed to be effected without contract, founded upon public letting. (Laws of 1859, chap. 363; Laws of 1864, chap. 275; Laws of 1865, chaps. 564, 565; Laws of 1866, chap. 367, § 4; Laws of 1867, chap. 697; Laws of 1870, chap. 626; Laws of 1872, chap. 872.) It is the duty of the legislature to confine and modify statutory remedies against assessments, so that substantial justice shall be done to both the city and the assessed person. (*People* v. *Utica Ins. Co.*, 15 Johns. 358; *Jackson* v. *Collins*, 3 Cow. 89; *Dresser* v. *Brooks*, 3 Barb. 429; *In re Merriam*, 84 N. Y. 610.)

Finch, J. This assessment was levied to pay the expense of sewerage upon the Boulevard between Seventy-seventh and Ninety-second streets, and is sought to be vacated upon the ground that the work was not done by contract as required by the charter of 1873. (Laws of 1873, chap. 335, § 91.) The application is resisted by the city upon two grounds; first, that the sewerage was a "work in progress" at the adoption of the charter, and so excepted from the contract system by the terms of that enactment; and, second, that the transfer by

section 73 to the newly-constituted department of public works of "all the powers and functions heretofore, or now possessed by the department of public works in relation to the Boulevard road or public drive, streets, avenues, and roads above Fifty-ninth street," and the direction that "all provisions of law conferring powers and devolving duties upon the department of public parks in relation thereto," should be "transferred to and conferred upon the newly-organized department," preserved the right of that department to perform its work by the day and without advertisement and contract.

*First.* The facts established lead us to the conclusion that the sewerage for which the assessment in question was made was not a work "in progress" within the exception of the charter. What is known as the Boulevard is the wide avenue laid out by the commissioners of the Central park pursuant to chapter 565 of the Laws of 1865, and extending from Fifty-ninth street along the general course of the old Bloomingdale · road to One Hundred and Fifty-fifth street. This improvement is described as about five miles in length, constituting an avenue of unusual width; having a road-way on each side, and ornamented grounds in the center; serving as a street, and yet being something more and different, and a work peculiar in its elements of beauty and ornament; partaking of the nature of a public park or place, while constructed in the form and serving the ordinary purposes of a street or avenue. A proper drainage was an essential and necessary element of its construction. A plan for such drainage throughout its whole extent was prepared and approved by the proper authorities in March, 1872. But, as the grades of the Boulevard were different and somewhat irregular, it became impossible to adopt one complete and uniform system of sewerage covering its entire length, and it proved to be necessary to divide that work into sections, or drainage areas. Accordingly, the system of sewers for the Boulevard was divided into five sections, each designated by a letter and number, of which the section between Seventy-seventh and Ninety-second street was designated as 12 E. This division was not arbitrary, or purely as a matter of convenience. It

grew out of and was dictated by the character of the grades. Each of the five drainage areas or districts was independent of every other from the necessities of the case, and its size and boundaries were dictated by the character of the district to be drained. Each section had its separate outlet; was in no manner connected with any other; was not at all affected by what was done or undone elsewhere; and constituted an independent work by itself. One could have been completed, and accomplished its purpose perfectly and effectually, although the others were untouched, and they could have been successfully built although the one had been entirely omitted. One might have been completed by day's work, while others were progressing under contracts without the least collision or complication, or the slightest necessary waste. For the purpose of assessment this natural separation was recognized and enforced. Each section was charged with its own necessary expense, and a separate assessment for that improvement levied upon the property benefited within that particular drainage area. Each section thus paid for its own separate system of sewers, and the property-owners in one gained no benefit and suffered no loss from the greater or less expense incurred in another.

When the charter was adopted, some work had been done upon one of the sections, but none upon the drainage district for which the present assessment was levied. The section in progress was distant a half mile. It is now claimed on behalf of the city that the sewerage of the Boulevard was one entire work, and the beginning of the improvement upon any one separate section was work "in progress" upon all. We have recently considered the meaning of this phrase as used in the charter, and the scope and purpose of the exception thereby declared. (*Matter of Weil*, 83 N. Y. 543.) In that case we expressed the opinion that the purpose of the exception was to avoid the evil and complication arising from an application of the contract system to work already commenced, and moving toward completion in a different manner; and was descriptive of cases where the city was already committed to a specific mode of doing the work and could not change the system

without complication or confusion.    That was a case of chang-
ing the grade of Ninth avenue, and of certain intersecting
streets to correspond with such grade. The several streets were
regulated separately, each as a distinct work, and followed by
its own separate and distinct assessment.    We thought then
that while in some broad and general sense the whole work
might be described as one general improvement, it was in fact
for the purposes of assessment a series of separate improve-
ments.    The facts of the present case, and the argument upon
them has served only to strengthen and confirm our confidence
in that judgment.    The exception of the charter had an evi-
dent purpose and aim.    The general and dominant idea was to
do all of the city's work by the contract system, and that only
was intended to be exempted which was already begun, which
was "in progress" on a system and in a mode of its own, and
which could not be interfered with unless at the peril of evil
consequences.    Here it is easy to see that no sensible or real
reason existed for not applying the contract system.    The
separate and independent work of this separate and independ-
ent drainage area, to be followed by its own separate and dis-
tinct assessment, could have been done on the contract system
without any difficulty or the least collision with existing ar-
rangements.    Not one substantial reason can be imagined or
given for withdrawing it from the general mandate of the
charter.    We conclude, therefore, that it was not within the
exception, and the work should have been done by contract.

*Second.* We have already twice expressed the opinion that
the discretion conferred before the charter of 1873 upon the
commissioners of the Central park to do the work which they
were authorized to perform in such manner as they should de-
termine, whether by contract or day's work, which in 1870 was
transferred to the department of public parks, was not saved
by section 73 of the charter of 1873 to the newly-constituted
department of public works.    (*Matter of Robbins*, 82 N. Y.
131 ; *Matter of Weil*, *supra*.)    It is claimed, however, on
behalf of the city that in neither case was the question neces-
sarily involved, and it has been argued here with so much of

earnestness as an open question as to make prudent some further consideration of the result previously declared.

Power to construct the Boulevard was originally conferred upon the commissioners of the Central park. (Laws of 1865, chap. 565.) Since at that time there was no limitation upon the manner of exercising the power, they had a discretion to proceed by day's work, or by contract, as to them seemed best (*Greene* v. *Mayor,* 60 N. Y. 303); and that discretion appears to have been expressly conferred by statute. (Laws of 1866, chap. 367, § 7.) We may further concede, without so deciding, that it remained to the date of the charter of 1873, so as to narrow the question to the effect of that enactment. The provisions of section 91 were intended to lay down a broad and general rule which should govern the action of all officers and departments of the city government in the performance of their duties and the exercise of their powers. It did not purport to dictate their duties nor define their powers, but *did* aim to control and take away any discretion upon one subject in the performance of duty or the exercise of power. For example, it in no respect defined or controlled the powers of the department of public works, but it did enact that such department should exercise certain of its powers only in one way, and so limited its mode of exercising them. On the other hand, the purport of section 73 was to further define the powers and duties of the newly-constituted department of public works. By section 70 its organization was provided for. By section 71 its general " cognizance and control " is described by a schedule of ten subjects to which it should extend, one of which is "public sewers and drainage." By section 72 it is divided into eight bureaux, and is followed by section 73, which still further defines and extends its powers. It authorizes the commissioner to contract for lighting the streets, and to introduce water meters and collect the charges from consumers, and then follows the language upon which the city relies. We think its point and purpose has been misapprehended. It had no special reference to the Boulevard as is contended, but to that in common with all the other streets, avenues and roads

above Fifty-ninth street "*not* embraced within the limits of, or immediately adjacent to any park or public place." In the *Robbins Case* the whole course of legislation leading down to this provision is fully and clearly detailed, and it demonstrates conclusively that its distinct and definite purpose, when it first appeared in the act of 1872, was to draw the line between the jurisdiction of the department of public works and that of public parks, and to restore to the former and take away from the latter control of streets north of Fifty-ninth street, including the Boulevard, so far as they were " not " within or adjacent to the public parks. Those which were, and those only, were left to the control of the department of public parks. There is, thus, no inconsistency between section 91 and section 73. The latter helps to define the jurisdiction of the department of public works, while the former requires that whenever acting in the exercise of its powers it shall have no discretion as to the mode of doing the work, but shall proceed by contract. We have no doubt of the correctness of the construction adopted in the cases referred to, and decide again that section 73 was not intended to, and does not save to the department of public works the right to dispense with the contract system.

It follows that the assessment complained of was invalid, and should be vacated.

The order of the General Term should be reversed and that of the Special Term affirmed, with costs.

All concur, except RAPALLO, J., absent.

Ordered accordingly.