IN THE MATTER OF THE PETITION OF THE EMIGRANT INDUSTRIAL SAVINGS BANK TO VACATE AN ASSESSMENT.

The provision of the charter of the city of New York of 1873 (§ 91, chap. 335, Laws of 1873), in reference to letting work by contract, imperatively requires that where an aggregate expenditure of more than $1,000 is involved in the completion, in all its parts, of any particular job to be thereafter undertaken for the corporation, or in obtaining supplies to be furnished to it for any particular purpose, the same shall be by contract, awarded to the lowest bidder after advertisement for sealed proposals, unless otherwise ordered by a vote of three-fourths of the members elected to the common council.

The power conferred by said provision upon the common council to dispense with a contract by a three-fourths vote is a discretionary power to be exercised in each particular case, and cannot be delegated.

The act of 1865 (chap. 535, Laws of 1865), providing for the laying out and improving of certain portions of said city by the commissioners of the Central Park, conferred upon said commissioners no authority to improve any street south of One Hundred and Fifty-fifth street.

The act of 1866 (chap. 367, Laws of 1866), relating to the powers and duties of said commissioners, limits the powers conferred to the streets which they are by law authorized to lay out or improve.

Under an ordinance of the common council adopted by a three-fourths vote, in December, 1873, the work of improving One Hundred and Forty-fifth street was undertaken. The ordinance directed the work to be done in such manner as the commissioner of public works "may deem expedient and for the best interests of the city and property owners." The work was done by day's work, without a contract, involving an expenditure of over $107,000; and an assessment was laid to defray such expenditure. In proceedings to vacate the assessment,

---

*held,* that the commissioner of public works, as succeeding to the powers of the commissioners of Central Park, had no authority under said acts of 1865 and 1866 to cause the work to be done by day's work; that the improvement fell within the provision of the charter of 1873 above specified; that the clause in the ordinance attempting to delegate to the commissioners the power to determine the method of doing the work was unauthorized; that the expense was incurred in violation of said charter provision and could not form the basis of a valid assessment; and that therefore the assessment was void.

Also, *held,* that the petitioner was not debarred from this remedy by the act of 1874 (chap. 313, Laws of 1874), declaring that no assessment shall be vacated for certain specified errors and irregularities, unless fraud is shown. Proof of fraud is only necessary where the error or irregularity is one of those enumerated; where not thus enumerated, and it is a substantial one, the proceeding is maintainable without proof of fraud under chapter 312, Laws of 1874.

Also, *held,* that it was not necessary for the petitioner to show actual damage; that a total disregard of the statutory provision was in law a substantial error.

(Argued April 16, 1878; decided December 10, 1878.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term denying an application of the petitioner above named to vacate an assessment for paving, curbing, guttering and flagging One Hundred and Forty-fifth street from Seventh avenue to the Boulevard.

*Charles E. Miller,* for appellant. The court erred in finding that as this was not a case of repavement and no fraud was alleged it was not within the provisions of chapter 313 of Laws of 1874. (*In re Second Ave. M. E. Church,* 66 N. Y., 395; *In re Zborowski,* 68 id., 88; *In re Rhinelander,* id., 105.) The performance of the work by day's work was a substantial error under chapter 312, Laws of 1874. (66 N. Y., 395; 68 id., 105; *McSpedon* v. *Mayor, etc.,* 7 Bosw., 601; *Brady* v. *Mayor, etc.,* 20 N. Y., 312.)

*J. A. Beall,* for respondent. The improvement was properly made by day's work under direction of the commissioner of public works, and no contract was requisite. (Laws 1865,

chap. 565, §§ 1, 8; Laws 1866, chap. 367, §§ 1, 7; Laws 1872, chap. 872, § 7, p. 2134; *Green* v. *Mayor*, etc., 60 N. Y., 303.) As this was not a case of repavement and no fraud having been shown there was no ground for vacating the assessment. (Laws 1874, chap. 313, p. 367; *In re Mayor*, 50 N. Y., 504; *In re Agnew*, 4 Hun, 440, 441; 63 N. Y., 635.)

Rapallo, J. The petition in this matter specifies two grounds upon which the petitioner claims that the assessment should be vacated. First, that no contract for the work, for the expense of which the assessment was laid, was advertised for or made in conformity with the provisions of section 91 of the charter of 1873 (Laws of 1873, page 508) and Secondly, that there is included in the assessment the cost of work not authorized by the ordinance upon which the assessment is founded. The first ground is the only one which we deem it necessary to consider.

The work and supplies necessary to complete the improvement in question in this case involved the expenditure of far more than $1,000, viz., of upwards of $107,000, and it is conceded that there was no contract and no advertisement for bids or proposals either for the work or supplies, but that the work was done by day's work and the supplies furnished on orders of the commissioner of public works. The provisions of section 91 in our judgment imperatively require, that where an aggregate expenditure of more than $1,000 is involved in the completion in all its parts of any particular job, to be undertaken for the corporation, or in obtaining supplies to be furnished to it for any particular purpose, the same shall be by contract to be awarded to the lowest bidder after advertisement for sealed proposals, unless otherwise ordered by a vote of three-fourths of the members elected to the common council. The only cases excepted from this provision are such works, in progress at the time of the adoption of the charter, as were authorized by law or ordinance to be done otherwise than by contract. The present case does not fall within the exception, the ordi-

nance under which it was undertaken not having been passed until December, 1873.

It was held at General Term that the provisions of section 91 did not require that the work in question be done by contract, for the reason that the commissioner of public works, as succeeding to the powers of the commissioners of Central Park, had power to cause the work to be done either by day's work or contract by virtue of the provisions of chapter 565 of the Laws of 1865, and chapter 367 of the Laws of 1866.

After a careful examination of these acts we are unable to find in them any such power. The work for which the present assessment was laid was paving, curbing, guttering and flagging One Hundred and Forty-fifth street from Seventh avenue to the Boulevard. The power claimed, is said by counsel to be conferred by the eighth section of the act of 1865 and the seventh section of the act of 1866. The eighth section of the act of 1865 enacts as to the streets, roads, public squares and places laid out by the commissoners of Central Park as provided in the act, that such commissioners may cause such streets, etc., to be regulated, graded and improved as streets or country roads, but there is no power contained in the act to improve any streets except those which the commissioners are by the act empowered to lay out. These are as appears from section 1 of the act streets in that part of the city to the northward of One Hundred and Fifty-fifth street, and also the road or public drive now called the Boulevard. There is no power given in the act to lay out any other street. The only power conferred on the commissioners in respect to any street south of One Hundred and Fifty-fifth street is to determine the grade of such streets and avenues as intersect the boulevard. No power is given to do any work upon such intersecting streets and avenues. The maps which by section 2 the commissioners are directed to file are maps of the streets, etc., to be laid out by them pursuant to the act. These would necessarily, after the completion of the work, exhibit the streets

intersected by the Boulevard, at least at the point of inter-section, and might show their grade, but there is nothing in the act from which authority can be inferred to do work upon any streets or avenues except those authorized to be laid out, viz. : the Boulevard, One Hundred and Fifty-fifth street and the streets and places northerly thereof. The work in question being upon One Hundred and Forty-fifth street is clearly not embraced within the act of 1865.

The act of 1866 authorizes the commissioners of Central Park to lay out St. Nicholas avenue from One Hundred and Tenth to One Hundred and Fifty-fifth street and to extend and widen Manhattan street, and also to establish or change the grade of any street or avenue which intersects any street, road or avenue which they are by law required to lay out or improve. The seventh section vests the commissioners with all the powers of the corporation in respect to the streets and avenues required by law to be laid out or improved by them or under their direction, and the laying out, grading, regulating, sewering, paving and improving the same, and authorizes the commissioners to do the work either by day's work or by contract, and makes provision for the expense of such work by assessment and by general taxation. But these powers are strictly confined to the streets which the commissioners are by law authorized to lay out or improve, and we find nothing in the act of 1866, or in any other to which we have been referred, authorizing them to lay out or improve One Hundred and Forty-fifth street.

The work now in question does not appear to have been undertaken under either of the acts referred to, but on the contrary by order of the common council, by ordinance adopted in December, 1873. We are of opinion that it falls within the provisions of section 91 of the charter of 1873 and is not affected by the acts of 1865 and 1866. It is there-fore not necessary to consider the points raised by the appel-lant's counsel in respect to the constitutionality of those acts nor the question whether they are controlled by the later provisions in section 91 of the charter of 1873.

The counsel for the city contend that, conceding section 91 to be applicable to the work in question, it has been complied with, inasmuch as the ordinance was adopted by a vote of three-fourths of the members elected to the common council, and directs that the work "be done in such manner as the said commissioner may deem expedient and for the best interests of the city and property owners." This clause it is claimed authorized the commissioner of public works to do the work without contract.

Assuming that the power intended to be given to the commissioner, by this clause related to the manner of employing the persons to do the work, and to the purchase of the supplies necessary therefor, and not merely to the mode in which the work should be performed, we think that it was ineffectual to dispense with the provisions of the charter requiring advertisement for sealed proposals, and a contract with the lowest bidder. The law confers upon the common council the power and duty of deciding in each particular case whether those provisions shall be dispensed with, and requires a vote of three-fourths of all the members elected, to accomplish that purpose. This is eminently a discretionary power which cannot be delegated. It is their judgment which the law requires and not that of any officer they may designate. There is no provision in the law itself authorizing them to delegate this power, and the case falls within the settled principle, that powers of this description involving the exercise of judgment and discretion cannot be delegated, a principle which applies to public bodies and officers as well as to private individuals. It was applied by this court very recently to a case similar to the present. The charter of the city of Binghamton provided that the sidewalks should be built and maintained by the owners of the adjacent premises, and that in case they failed to do it when ordered, within a time to be limited by notice, the common council should by contract or otherwise cause it to be done. We held that the power of the common council to determine whether it should be done by contract or otherwise was a discretionary power

which they could not delegate to the superintendent of streets. (*Birdsall* v. *Clark*, decided March, 1878.*) To the same effect is *Thompson* v. *Schermerhorn* (6 N. Y., 92).

Our conclusion is that this expense was incurred in violation of the provisions of the ninety-first section of the charter of 1873 and could not form the basis of a valid assessment.

We cannot concur in the view of the counsel for the corporation that this section was intended only to guard against fraudulent contracts. We think that its intention plainly was to prohibit the incurring of expense by the corporation for work or supplies, where the aggregate expense of all work necessary for the completion of any particular job in all its parts or of supplies required for any particular purpose should exceed $1,000, without publicly inviting competition and awarding a contract to the lowest bidder giving security for its performance. As cases might arise where from the nature of the work, or other circumstances, it would be either impracticable or unsuitable to contract for the work or supplies in that manner, a discretion was lodged in the common council impowering them to direct otherwise in such special cases, but this discretion was carefully guarded by providing that it could be exercised only by the concurrent vote of three-fourths of all the members elected. For the propriety and wisdom of its exercise they are responsible to their constituents and they cannot either throw off this responsibility, or deprive their constituents of the benefit of their individual judgment by a delegation of this power to a third party.

It is further contended on the part of the city that chapter 313 of the Laws of 1874, debars the petitioner from the remedy he seeks by this proceeding, no actual fraud being shown. It is not necessary to discuss that point at length, as in two cases recently before this court we have held that proof of fraud is necessary only where the error or irregularity complained of is one of those enumerated in the act, and that where the error is not one of those thus enumerated,

*73 N. Y., 73.

and is substantial, the proceeding is maintainable without showing fraud.   This result follows from construing chapter 313 of the Laws of 1874 in connection with chapter 312 of the same year which is *in pari materia*.   (*In re Protestant Episcopal Public School,*[*] and *In re Walker*,[†] decided Nov. 1878.)   The error in the present case consists in the total omission of any proposals, competition or contract for the work.   The only specification in the act of 1874, chapter 313, which is in any respect applicable to this case is that of an omission to advertise or irregularity in advertising for proposals.   This is not sufficient to cover the case of the total absence of any contract or proposals or competition.   No such vital omissions as those are specified or attempted to be cured.   It was doubtless intended to obviate technical objections to the regularity of the advertisement for proposals or the omission of the advertisement in some of the corporation papers.   It can hardly be supposed that the Legislature intended by this act to validate assessments for expenses incurred in palpable violation of the provisions of the charter requiring that an opportunity be afforded for competition for public work, and thus practically to nullify those salutary provisions.   The whole context of chapter 313 read in connection with chapter 312, and the character of the irregularities specified, show that the intention of the act was to guard against assessments being set aside for mere errors of form or technical irregularities or defects, but not to prevent redress in cases of substantial error.

The act specifies among the irregularities which shall not be ground for vacating an assessment unless fraud be shown, the omission to comply with or carry out any *detail* of any law or ordinance, or any irregularity or technicality.   This guarded language clearly excludes the idea that the act was intended to sanction or cure a total failure to comply with a mandatory law or ordinance, or a direct violation of its most important provisions, and shows that it was designed to obviate technical objections, founded upon omissions to strictly

---

[*] *Ante*, p. 324.                    [†] *Ante*, p. 354.

carry out such provisions of a law or ordinance· as might fairly be regarded and treated ·as mere matter of detail or form.    The act is not capable of the strain which would be required to make it embrace a case like the present.

The counsel for the corporation contends that the error is innocuous because it does not appear that the expense was increased by the absence of competition, and a contract. How the fact may be in this particular case it is impossible for us to say, but it is very evident that the Legislature have deemed it a necessary safe-guard against fraud and abuses, which it might be difficult if not impossible to detect or remedy, to provide that expenditures beyond a certain amount shall not be incurred without due competition and a contract with security for its performance.    A total disregard of these provisions is in law a substantial error and it is not incumbent upon the party complaining to show what actual damage has resulted.    It is sufficient that he has been deprived of the protection which the law was intended to afford.

.The orders of the General and Special Terms should be reversed, and the assessment vacated, with costs.

· All concur.

Ordered accordingly.