The judgment, for the reasons already assigned, should therefore be affirmed, with costs.

BRADY, J., concurs.

---

## SUPREME COURT.

JOHN EDWARDS, appellant, agt. THE CITY OF WATERTOWN, respondent.

*Municipal corporations— Delegation of powers or trusts — Distinction between acts quasi judicial and those which are merely ministerial — Ratification — Estoppel.*

Public powers or trusts devolved by law upon the governing body of a municipal corporation, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others.

But there is a distinction between acts *quasi* judicial or involving discretion, and those which are merely ministerial.

Where in an action brought to recover for work and labor performed, materials furnished and money paid out for the defendant, a municipal corporation, in fitting up certain rooms leased by the defendant, and furnishing them with fixtures and furniture for the use of the defendant's officers, it was found by the referee that, at a regular meeting of the common council, it was resolved to take a lease of the rooms in question for five years, with a privilege of ten years if desired at a rent of $400 per year; and at the same meeting the mayor of the city, as the presiding officer of the common council, appointed a committee consisting of three members of the common council and the recorder of the city to arrange the rooms and procure the necessary furniture, the action of the mayor being approved by the common council. That said committee, after their appointment, met informally and requested the plaintiff to do the work and furnish the materials for which the action is brought. The plaintiff was the agent of the owners

of the rooms, and as such had negotiated with the defendant's officer for the lease of the rooms. The committee promised the plaintiff that he should be paid for such services and material aside from the $400 a year which his principals were to receive for the rent of the rooms. The plaintiff thereupon caused the work to be done and the materials to be furnished, and the city officer took possession of the rooms so furnished in the latter part of November, 1874. On the 9th of December, 1874, the common council held a meeting in said rooms and by resolution accepted them as fitted up by the plaintiff, and authorized a lease to be taken in accordance with the terms of the previous resolutions, and such lease was afterwards executed on the part of the owners and lessors by the plaintiff as their agent. That the fact that the committee had promised the plaintiff compensation, aside from the contemplated rent of $400 a year, was not made known to the common council until after the execution of the lease:

*Held*, that the common council could delegate to a committee power to procure the necessary furniture for the rooms. That the principle that public powers or trusts devolved by law upon the governing body of a municipal corporation, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others, does not apply to this case. The distinction is between acts *quasi* judicial, or involving discretion, and those which are merely ministerial.

*Held*, also, that the acceptance of the furnished rooms by the common council was a ratification of the action of the committee.

The position that the common council had no authority to appoint upon the committee a person not a member of their body, is untenable.

*Held*, further, that the plaintiff is not estopped from recovering, by his action respecting the lease. The defendant's committee well knew that the furniture was provided by the plaintiff, and not by his principal, and that it was to be paid for, aside from the rent of the rooms, and their knowledge on the subject is to be treated as the knowledge of their principal.

*Fourth Department, General Term, January*, 1881.

*Before* TALCOTT, *P. J.*, SMITH *and* HARDIN, *JJ.*

APPEAL from a judgment, entered and docketed in Jefferson county, January 30, 1879, on the report of a referee. The judgment was in favor of the defendant and against the plaintiff, dismissing his complaint with costs. The action was commenced to recover of defendant, a municipal corporation, for work and labor performed, materials furnished

and money paid out for the defendant by the plaintiff in building desks, cupboard, platforms and other furniture, including the frame work of a sign, with which to furnish for the use and occupation of the city certain rooms leased by defendant of the widow and heirs-at-law of one Lawrence Hayes deceased. The defendant was a duly incorporated city, having its mayor and common council, and the rooms were leased for the use of defendant's officers, and consisted of a mayor's office and common council room, recorder's office and court room, city chamberlain's office, police office, &c. In making the lease with defendant, the plaintiff acted as the agent or attorney in fact of the widow and heirs, who were the owners of the premises. At a regular meeting of defendant's common council, on the evening of September 22, 1874, the plaintiff made proposals to said council on behalf of his principals, to lease to defendant certain rooms on Court street in said city, to put them in condition for occupation at an annual rent of $400 per year.

The rooms were on the second floor in Hayes' block, and at this time were not adapted to the needs or wants of the city, and for that purpose must be reconstructed. The plaintiff had his map or plan before the common council, which represented the rooms as he proposed to reconstruct them. The plan and proposals made by plaintiff on behalf of his principals were accepted by defendant's common council, by resolution of September 22, 1874, in these words: "*Resolved,* That the city take from Mr. Edwards a lease of his rooms on Court street for five years with the privilege of ten years if desired." The above facts were found by one Wayland F. Ford, the referee in the action; and he also found the further fact that the plan and proposals thus made and accepted did not indicate or include in any measure, any part or portion of the work, labor or materials for which the plaintiff sued to recover in this action; and that there was no proposal or agreement on the part of plaintiff or his principals to do this specific work under the agreement for the leasing of the rooms. At the same meeting

of the common council which passed the resolution accepting plaintiff's plan and proposals for the leasing of the rooms, the mayor of the city appointed a committee of four persons, three of whom were aldermen and one the recorder of the city, to arrange the rooms and procure the necessary furniture. The referee found, as facts, that the appointment of this committee by the mayor was the act of defendant's common council; that this committee employed the plaintiff to do the work and furnish the materials in question; that they agreed he should be paid for the same aside from the rent of $400 a year, which was to be paid to his principals; that the plaintiff caused the work to be done and furnished the materials, which were worth the amount charged therefor and alleged in the complaint, under the agreement that he was to be paid for the same by the defendant. The acting members of the committee were Andrew J. Moore, one of the aldermen, and Laban H. Ainsworth, the recorder of the city. The common council moved into the rooms about the middle of November, 1874, and continued to occupy and were in possession of the rooms and furniture at the time this action was commenced.

On December 9, 1874, at a regular meeting of the defendant's common council, a resolution accepting the rooms in question was passed. The resolution was as follows : "*Resolved,* That the city rooms, as fitted up by Mr. Edwards, be accepted, and that the city attorney be and he is hereby authorized to draw a lease of the rooms for five years, with a privilege to the city of extending the lease to ten years or longer at an annual rent of $400 per year, payable quarterly, rent to commence December 1, 1874."

The lease was signed on behalf of the city by W. F. Porter, mayor, and by the city chamberlain, and on behalf of the heirs of the Hayes' estate by John Edwards, the plaintiff, as attorney, and was dated December 1, 1874. The referee found, among other conclusions of law and fact, the following : "The common council is by law and the charter made the governing body of the corporation, and has power to rent

rooms for the meetings of the common council and rooms for the recorder's court, and purchase furniture for the rooms, and pay for the same as a part of the ordinary expenses of the city. So far as the arranging the rooms, procuring the necessary furniture and the amount of money to be expended for such purposes is concerned, the entire discretion vested in the common council was attempted to be delegated to a committee of four, one of whom was not a member of the common council. This I am of the opinion could not be done, and the committee could not make any contract binding upon the defendant. The plaintiff is chargeable with knowledge of want of power in the committee to make the contract. It is now claimed that defendant is liable on an implied agreement or assumpsit to pay for the work and materials. The authorities show beyond question that the defendant would be liable upon an implied agreement as well as upon an express contract, the contract not being *ultra vires*. It is an elementary principle of the law of contracts that in all cases the assent of the contracting parties must be shown. In an express contract an express promise or agreement is shown ; in an implied contract the assent of one or both parties is implied from their acts, as in *Dunn* agt. *St. Andrews Church* (14 *John.*, 117), where such an implication was made against a party from making payments on the contract. In this case it is impossible to infer from the evidence that the common council ever assented to the contract. The defendant used the rooms with the fixtures and articles for which plaintiff claims to recover, but such use was not under the contract made with the committee, but under the lease made with plaintiff's principals through plaintiff's agency, and the use under the contract would not render the defendant liable by reason of an implied assumpsit. It is not claimed the defendant has ratified the contract of the committee and is liable upon that ground. The authorities show that the defendant would be liable if a ratification was shown. But the evidence fails to show a ratification. A

ratification can only be made out and established from acts of the common council after the time the contract came to their knowledge, or it would be necessary to show an adoption of this contract by the common council or an agreement to be bound by it. The evidence shows that the common council repudiated the contract as soon as it came to their knowledge. They continued to occupy the rooms as fitted up, but claimed the right so to do under the terms of the lease. And such occupancy would not operate as a ratification of the contract made by the committee.

There is another principle which effectually precludes the plaintiff from recovery in this action. The plaintiff was seeking to obtain for his principals a valid contract of lease of these rooms for a term of years. A valid contract for more than one year could only be had by obtaining a written lease signed by the mayor of the city, who is the officer authorized to sign leases under the direction of the common council. The negotiations resulting in the lease were conducted throughout by the plaintiff on behalf of the owners of the rooms.

Plaintiff, therefore, is charged with knowledge of the terms of the resolution of December 9, 1874, and when he executed the lease on behalf of his principals, the mayor had authority to execute for the corporation when authorized by the common council. The plaintiff was bound to inquire as to the authority given the mayor. The negotiations must be regarded as continuing down to the time when the written lease was executed. The resolution of December ninth and the lease, by their terms, gave the defendant the use of the rooms, and the fixtures and materials for which this action is brought for the annual rent of $400 per year. The plaintiff is so connected with the lease as to preclude and estop him from recovery in this action. The execution of the lease and the assent of the plaintiff to the resolution of December ninth, amounts to a representation on the part of plaintiff that the defendant would get the use of the rooms, as the plaintiff had fitted them up for the annual rent of $400.

Relying upon that, the defendant entered into a valid con
tract of lease with plaintiff's principals for a term of years,
and the plaintiff is estopped from making any further claim,
either in his own behalf or in behalf of his principals. The
plaintiff obtained an additional advantage for his principals
in obtaining the written lease, for until that was signed, the
defendant was only tenant from year to year, and could have
terminated the tenancy at the end of any year. For these
reasons the defendant is entitled to judgment, that the plain-
tiff's complaint be dismissed.

*Anson B. Moore*, for appellant.

I. The expenses of fitting up and furnishing lights, furni-
ture, &c., for the city rooms, are properly chargeable to the
city. The common council may make the expenditures, and
the same, by the express language of the city charter, "shall
be included in the ordinary expenses of the city, and payable
out of the general fund" (*Watertown City Charter, title V.,
sec.* 3, *sub.* 4, *page* 44; *Session Laws* 1869, *chap.* 714). The
common council may delegate ministerial or administrative
duties to a committee (*Dillon on Municipal Corp., sec.* 60).
Where the duties are ministerial, less than a majority may act
(*Dillon on Corp.,* 249, *note, sec.* 22). They need not be con-
vened or act as a board. They may act informally (*Dillon on
Corp.,* 249, *note*). Where an act is performed by one of a
committee, the consent of the rest is presumed (*Dillon on
Corp.,* 249; 21 *Wend.,* 178; *Angel & Ames on Corp.,*
216–218, *and cases there cited*). Nothing but the oath of the
dissenting members will overthrow the presumption (21 *Wend.,*
178). The committee was regularly and legally appointed.
The referee so found. The power and authority conferred
on this committee by defendant's common council was to
"arrange the rooms and procure the necessary furniture."
They were the agents of defendant specially appointed for
such purpose, and such agency was lawfully conferred. It
was the province, as well as duty, of the common council to

appoint a committee for the purpose intended rather than that the labor required of said committee should be performed by the common council in person. In general, the only way in which a corporation aggregate can act or contract is through the intervention of agents, either specially designated by the act of incorporation or appointed and authorized by the corporation, in pursuance of it (*Coke upon Lit.*, *b.* 66; *Angel & Ames on Corp.*, secs. 276, 283; *The Planters and Merchants' Bank* agt. *Andrews*, 8 *Porter* [*Ala.*] *R.*, 404; *Randall* agt. *Van Vechten* 19 *Johns.* [*N. Y.*] *R.*, 65; *Owings* agt. *Speed*, 5 *Wheat.* [*U. S.*] *R.*, 424; *Hoven* agt. *The New Hampshire Asylum*, 13 *N. H. R.*, 532; *Smith* agt. *Natchez Steamboat Co.*, 1 *How.* [*Miss.*] *R.*, 478). While the referee in this case holds and decides that the power or authority " to purchase the necessary furniture for the use of the city rooms," was duly conferred by the city charter on defendant's common council, yet such power or authority could not be delegated to the committee. In other words, the common council must go as a body and inspect, purchase and arrange each and every article of furniture necessary for the rooms, in order to make their acts legal or binding on the defendant. It is submitted that the ruling and decision of the referee upon this question is clearly erroneous, and for which the judgment should be reversed. The general principle that a corporation may delegate to agents the performance of any act which it can itself perform is well established (*Sharp* agt. *The Mayor and Aldermen of New York*, 40 *Barb.*, 256, 257; *Randall* agt. *Van Vechten*, 19 *John.*, 60; 22 *Wend.*, 352; *Dubois* agt. *The Delaware and Hudson Canal Co.*, 4 *Wend.*, 288; *Brockway* agt. *Allen*, 17 *Wend.*, 40; 5 *Hill*, 107; *Gale* agt. *Nixon*, 6 *Cow.*, 448; 36 *How.*, 485; *Haight* agt. *Sohler*, 30 *Barb.*, 218; 7 *Cow.*, 485; 2 *Hill*, 151; 25 *How.*, 389; *Staunton* agt. *Camp*, 4 *Barb.*, 276; 1 *Kern.*, 200; *Hicks* agt. *Hinde*, 9 *Barb.*, 529; 7 *Cranch.* [*U. S.*] *R.*, 299; 2 *Pick.*, 352; 19 *N. Y. R.*, 315; *Warrall* agt. *Munn*, 1 *Seld.*, 229; *Ford* agt. *Williams*, 3 *Kern.*, 585; *Taft* agt. *Brewster*, 9 *John.*, 334;

*White* agt. *Skinner*, 13 *Johns.*, 310). The following propositions are, therefore, clearly established : 1. The appointment of the committee, aldermen Moore, Sloat and others, by the mayor of the city to " arrange the rooms and procure the necessary furniture," was the act of the defendant's common council, and was legitimate, legal and proper. 2. The said committee duly employed the plaintiff to do the work and furnish the materials for which this action is brought, under the express agreement that the defendant would pay him for the same ; that he caused the work to be done and furnished the materials in good faith in pursuance of the agreement made with said committee, and that the same were worth the amount charged therefor. 3. That the work performed and materials furnished by plaintiff were expended solely to make and " procure the necessary furniture," and that the same was not only necessary but indispensable to enable defendant to use and occupy the rooms in question. 4. That the members of said committee were the duly appointed and legally authorized agents of defendant ; that in the employment of plaintiff to do the work and furnish the materials in question, they did not exceed the power and authority conferred upon them by said common council, but such appointment for the purposes indicated carried with it the necessary power and authority to do just what the common council might do, " arrange the rooms and procure the necessary furniture," and the defendant is as sacredly bound by the acts of its committee as it could be were said acts done by the common council in person.

II. Municipal corporations, in their private character, as owners and occupiers of houses, lands, &c., are regarded in the same light as private corporations, and as individuals, and and are dealt with accordingly. A contract binding on a private corporation or an individual will be alike binding on a municipal corporation (*Angel & Ames on Corp.*, 17, 18, 19, 31, *note; Bailey* agt. *Mayor, &c., of New York*, 3 *Hill*, 531; *Wilcox on Mun. Corp.*, 2; *Moodalay* agt. *East India*

*Co.*, 1 *Brown Ch. R.*, 469 ; *Miller's Hist. Views of Eng. Gov't.*, 340 ; 1 *Kyd R.* 43–63 ; *Madox Hist. Eng. Exch.*, 402). It is not necessary that a municipal corporation should act under seal, in order to bind themselves, or to obligate others to them. A vote of the body or a legal quorum is sufficient for this purpose (10 *Abb. Pr. R.* [*N. S.*], 484 ; *Jackson* agt. *Hartwell*, 18 *Johns.* [*N. Y.*] *R.*, 422 ; *Angel & Ames on Corp.*, 21, *note*). A corporation can make any contract which is not in contravention of its charter or in violation of express statutory law, and the same is as binding upon it as upon an individual. It has power to make all such contracts as are necessary and usual in its course of business, as means to attain the object for which it was created, even where the charter or act of incorporation and statutory law are silent as as to what contracts it may make (15 *John. R.*, 383 ; 2 *Cow. R.*, 699 ; 13 *Peter's* [*U. S.*] *R.*, 551 ; *Angel & Ames on Corp.* [*3 ed.*], 250 ; *The United States* agt. *Aundy*, 11 *Wheat. R.*, 412 ; *Beaston* agt. *The Farmers' Bank of Delaware*, 12 *Peters'* [*U. S.*] *R.*, 135). A corporation keeping within the scope of its general powers may contract or bind itself to do any act at any place, and when the engagement is broken it will be equally liable (12 *John.*, 229 ; 7 *Cow.*, 540 ; 1 *Hilt.*, 562 ; *Bank of Utica* agt. *Lundes*, 3 *Cow.*, 684 ; *McCall* agt. *Byrone Manuf. Co.*, 6 *Conn. R.*, 420 ; *Dunn* agt. *Rector, &c., of St. Andrews*, 14 *John.*, 118 ; 9 *Paige*, 496 ; 17 *N. Y. R.*, 449). It is well settled that the acts of a corporation, evidenced by vote, written or unwritten, are as completely binding upon it, and are as complete authority to its agents as the most solemn acts done under the corporation seal. That it may as well be bound by express promises through its authorized agents as by deed, and that promises may as well be implied from its acts and the acts of its agents as if it had been an individual (*Bank of Columbia* agt. *Patterson's Administrators*, 7 *Cranch* [*U. S.*], *R.*, 305, 306 ; 5 *Wheat.*, 326 ; *Brady* agt. *Mayor of Brooklyn*, 1 *Barb.*, 584 ; *St. Mary's Church* agt. *Carr*, 6 *Barb.*, 576 ; *Fleckner* agt. *U. S. Bank*, 8 *Wheat.*,

357; *Bank of U. S.* agt. *Dandridge*, 12 *Wheat.*, 68; *Peterson* agt. *Mayor of New York*, 17 *N. Y. R.*, 449; *Dunn* agt. *Rector of St. Andrews' Church*, 14 *John.*, 118; *American Ins. Co.* agt. *Oakley*, 9 *Paige*, 496; *Watson* agt. *Bennett*, 12 *Barb.*, 196; *Foster* agt. *La Rue*, 15 *Barb.*, 623; *Angel & Ames on Corp.* [*8th ed.*], 212; *N. Y. R. R. Co.* agt. *New York*, 1 *Hilt.*, 587; *Murrick* agt. *Burlington P. R. Co.*, 11 *Iowa*, 75; *Buckley* agt. *Briggs*, 30 *Missouri R.* 452; 34 *N. Y. R.*, 30). It has been held express authority, not indispensable, to confer upon a corporation the right to borrow money, to deal on credit, &c. (*Mann* agt. *Commission Co.*, 15 *John.*, 44; *Chitty on Bills* [*5th ed.*], 17–21; *Bayley on Bills* [*5th ed.*], 69, 70; 9 *Paige Ch. R.*, 470; *Angel & Ames on Corp.*, 234; *Morse* agt. *Oakley*, 2 *Hill.*, 265). A charter may be presumed to have been given to persons who have long acted as a corporation (*Bank of U. S.* agt. *Dandridge*, 12 *Wheat.*, 71). To bind a corporation it is not necessary to show a written instrument or a vote of acceptance on the corporation books. From the same species of evidence the enactment and repeal of by-laws have been inferred (12 *Wheat.*, 71; 1 *Roll R.*, 82; 1 *Vent.*, 289; *The King* agt. *Aundy*, 1 *T. R.*, 575; 2 *T. R.*, 515; *Newberry* agt. *Francis*, 3 *T. R.*, 187; *Middlesex, husbandman*, agt. *Davis*, 3 *Met.*, 133; *Wetumpka R. R. Co.* agt. *Bingham*, 5 *Ala. R.*, 657; *Union Bank of Maryland* agt. *Ridgley*, 1 *Harris & Gill* [*Md.*] *R.*, 419, 420; *Attorney-General* agt. *Middleton*, 2 *Ves. Sen.*, 328; *Bank of U. S.* agt. *Dandridge*, 12 *Wheat.* [*U. S.*] *R.*, 105, *per* MARSHALL, *Ch. J.*; *Wood* agt. *Tate*, 5 *Bos. & Pull. R.*, 575; *The King* agt. *The Inhabitants of Chippsey-Norton*, 5 *East R.*, 240; 1 *Kyd on Corp.*, 263; *Doe* agt. *Woodman*, 8 *East R.*, 228; *Dean & Chapter of Rochester* agt. *Pierce*, 1 *Comp.* [*N. S.*] *R.*, 446; *Mayor, &c., of Stafford*, agt. *Tell*, 4 *Bing. R.*, 75; *Angel & Ames on Corp.* [*8th ed.*], 213; *Lowe* agt. *London R. R. Co.*, 18 *Q. B.*, 632; 9 *Eng. Law & Eq.*, 489).

III. The committee appointed in this case consisted of

three of defendant's aldermen and its recorder, Laban H. Ainsworth. The objection was made by defendant's counsel on the trial, that the recorder could not be legally appointed on the committee. This objection is not tenable. Ainsworth was as much a member of the committee and as much the agent of defendant as any other member. The common council has power to appoint any person its agent to do its business the same as a natural person (*Angel & Ames on Corp.* [3 *ed.*], 258, 267, 268, 269). The plaintiff dealt with Ainsworth and Moore, the acting members of said committee, in perfect good faith, as the agents of defendant, clothed with power and authority to purchase " the necessary furniture and arrange the rooms." By the solemn act of defendant's common council these men were held out to the plaintiff and the public as its duly authorized agents, and upon every principle of justice and equity defendant is estopped from denying it, and is bound by their acts. Plaintiff had the right to presume that in the appointment of said committee for the purposes indicated defendant did not exceed its chartered power or authority (*Akin* agt. *Blanchard,* 32 *Barb.,* 527; *Hope Mutual Life Insurance Co.* agt. *Taylor,* 2 *Robt.,* 278; 599; 22 *N. Y. R.,* 258; 36 *Barb.,* 420; *affirmed in* 40 *N. Y. R.,* 168; *Sharp* agt. *Mayor, &c., of New York,* 40 *Barb.,* 256; 25 *How. Pr. R.,* 389). It is submitted that the defendant is liable upon the express contract made with plaintiff by its duly authorized agents, and that the judgment for the reasons aforesaid should be reversed.

IV. The plaintiff completed his contract, made with the committee to furnish the rooms in question, in November, 1874, and so reported to the acting members thereof, Moore and Ainsworth; he rendered to them an account of the work done and the materials furnished; they looked over said account with plaintiff and duly approved the same and certified its correctness, and made a report thereof to the defendant's common council at its first meeting after the work was done. No objection was made to said report by said common

council. Defendant took immediate possession of the rooms and furniture, and thereafter and on the ninth day of December defendant's common council, at a regular meeting thereof, passed a resolution accepting said rooms as fitted up by the plaintiff. From these undisputed facts it follows: "1st. That the defendant had notice of the contract made with plaintiff, and of its complete performance on his part. Notice to defendant's agents in the transactions in which they were engaged, was notice to the principal. This rule applies equally to a corporation as to a natural person (*Lawrence* agt. *Tucker*, 7 *Green* [*Me.*] *R.*, 195; *Bank* agt. *Whitehead*, 10 *Watts* [*Penn.*] *R.*, 397; *Boggs* agt. *Lancaster Bank*, 7 *Watts & Serg.* [*Penn.*] *R.*, 336; *McEwen et al.* agt. *The Montgomery County Mutual Insurance Company*, 5 *Hill R.*, 101; *Trenton Banking Company* agt. *Woodruff*, 1 *Green* [*N. J.*] *Ch. R.*, 117; *Angel & Ames on Corp.* [3*d ed.*], 299). 2. The work done and materials furnished were duly accepted by defendant. The accounting between the plaintiff and defendant's agents, Moore and Ainsworth, and the acceptance of the work by them was the act of defendant and binding on it. 3. In taking possession of the rooms and furniture in question, and passing the resolution of acceptance of December 9, 1874, the common council adopted and duly confirmed the contract made with plaintiff by their committee, and are estopped from denying or repudiating the same. 4. The conclusions of the referee are, therefore, in direct conflict with both the law and the conceded facts in the case. *Sub. a.* The plan and proposals for leasing the rooms to defendant, and accepted by defendant's common council, did not include any part or portion of the work and materials constituting the furniture, for which plaintiff claims to recover. *Sub. b.* Each and every member of the common council had personal knowledge that the plaintiff had been employed by this committee to do the work and furnish the rooms in question. Aside from the fact that the same was not included in, or made any part of, the contract for leasing, and not in the plan and proposals accepted,

they were present and saw the plaintiff doing the work, and were informed by the members of the committee that plaintiff was employed to do the work and they well knew under what terms he was doing it; hence, the fact was known to them that the furniture was being made by plaintiff under a different and distinct contract from the contract of leasing. *Sub. c.* In view of the foregoing conceded facts the special pleading of the referee in his opinion in which he perverts and misapplies, among other principles, those of estoppel, and seeks to make legal precedents and authorities yield and bend in manifest divergence from the principles of justice, equity and right, to enable the defendant to cheat and defraud the plaintiff out of all honest and just claims, if not unprecedented, is, to say the least, quite remarkable. No principle of law is better settled than that " one who is not bound by his covenants cannot take advantage of an estoppel " (*Lansing* agt. *Montgomery*, 2 *John.*, 382). One party not estopped unless the other is; an estoppel is reciprocal and binding on both parties (8 *Wend.*, 480; 5 *Hill.*, 183; 32 *N. Y. R.*, 280; *Clute* agt. *James*, 28 *N. Y. R.*, 280). Yet the referee overturns and subverts this just and equitable rule, and holds and decides the monstrous proposition that defendant's common council could repudiate a just contract made with plaintiff by their duly authorized agents to fit up and furnish with " necessary furniture " rooms for their use and occupation ; and that they could continue to occupy the rooms so fitted up, and use and enjoy the furniture that they had thus dishonestly obtained, for a period of ten years if they so desired, without payment for the same ; and that plaintiff was estopped from a recovery, and from the enforcement of a just, fair and honest contract, entered into on his part in perfect good faith. Instead of applying the doctrine of estoppel to protect the plaintiff in his rights, and in the enforcement of an honest contract against defendant, its aid is here invoked, first to perpetrate and then perpetuate injustice, outrage and wrong.

V. The defendant is liable upon an implied contract **for**

the labor and materials in question. Assumpsit lies on an implied promise against a corporation as well as an individual (*Dunn* agt. *The Rectors, Wardens, &c., of St. Andrews' Church*, 14 *John. R.*, 117, 118; *Mott* agt. *Hicks*, 1 *Cow.*, 513; *Baker* agt. *Mechanics Ins. Co.*, 3 *Wend.*, 94; 7 *Cranch* [*U. S.*], *R.*, 279–307; 12 *John. R.*, 227; 19 *John.*, 65; 12 *Wheat.*, 64–67; 30 *Barb.*, 218; 1 *Halst.*, 115; 3 *Halst.*, 191, 192; 19 *Johns.*, 283, 284; *Cow.*, 340; 22 *N. Y. R.*, 258; 34 *N. Y. R.*, 30–74; 2 *Robb*, 282; 1 *Harris & Gill* [*Md.*] *R.*, 324; 5 *Wheat.*, 326; *Hills* agt. *Bannister*, 8 *Cow.*, 31). All duties imposed on corporations aggregate by law, and all benefits conferred at their request raise implied promises, for the enforcement of which an action will lie (*Salem Bank* agt. *Gloucester Bank*, 17 *Mass. R.*, 1, 33, 479; 8 *Pick.* [*Mass.*] *R.*, 178; *Bank of Kentucky* agt. *Wester et al.*, 2 *Peters*, 318; 11 *Mass.*, 113; 14 *Mass.*, 172; *Amherst Academy* agt. *Cowles*, 6 *Pick.* [*Mass*] *R.*, 427; *Kenedy* agt. *Baltimore Ins. Co.*, 3 *Harris & John.* [*Md.*] *R.*, 367; *Stone* agt. *Congregational Society of Berkshire*, 14 *Vt.*, 86; 1 *Halst.* [*N. J.*] *R.*, 115; 14 *John.*, 118; 1 *Pennington* [*N. J.*] *R.*, 347; 3 *Halst.* [*N. J.*] *R.*, 119; 19 *John. R.*, 284; *The Chestnut Hill and Spring House Turnpike Co.* agt. *Butler*, 4 *Serg. & Rawle* [*Penn.*] *R.*, 6; *Angel & Ames on Corp.* [*3d ed.*], 214, 215). Assumpsit, as well as case, may be maintained against a corporation aggregate for default in any duty imposed by law, for such duty raises an implied promise of the corporation (*Kortwright* agt. *Buffalo Commercial Bank*, 20 *Wend.*, 347, 348; *affirmed in court of errors*, 22 *Wend.*, 348; *Taylor's Landlord and Tenant* [*6th ed.*], secs. 635, 636, *pages* 489, 490). A contract may be implied against a corporation, and it may affirm the acts of an assumed agent and thus be bound by them (20 *Wend.*, 91; 22 *Wend.*, 384; 4 *Cow.*, 645; 2 *Kent's Com.*, 288; 14 *Barb.*, 358; *Angel & Ames on Corp.*, 172, secs. 7, 8; *Bank of Lyons* agt. *Dennison, Hill & Denio's Sup.*, 398; *Harlem Gas Light Co.* agt. *Mayor of N. Y.*, 33 *N. Y. R.*, 309; *affirming*, 3 *Rob*-

*ertson*, 100 ; 47 *N. Y. R.*, 475 ; 57 *Barb.*, 497 ; *Folger* agt.
*Mitchell*, 3 *Pick.* [*Mass.*] *R.*, 396).

VI. Concede that the committee had no original power or
authority to bind the defendant in this case, yet there was
clearly a satisfaction of the contract by the defendant's subse-
quent acts.    Where persons assuming to act as agents of a
corporation, but, without legal authority, make a contract and
the corporation receive the benefit of it, and use the property
acquired under it, such acts will ratify the contract and render
the corporation liable (*Bank of Columbia* agt. *Patterson's
Administrators, &c.*, 7 *Cranch* [*U. S.*] *R.*, 299 ; 19 *Johns.*,
60 ; 1 *Pick.* [*Mass.*] *R.*, 372 ; 12 *Wheat.*, 72 ; 14 *Johns. R.*,
118 ; 5 *Ala. R.*, 808 ; *Angel & Ames on Corp.* [*8th ed.*], 215 ;
*Gooday* agt. *The Colchester and Stone Valley Ry. Co.*, 15 *Eng.
Law and Eq. R.*, 596–598, 599).    Certain property was pur-
chased by agents of a corporation who gave two notes in its
own name and the corporation took possession ; held, that it
ratified their acts and could not set up a want of authority.
(*Moss* agt. *Rossie Lead Co.*, 5 *Hill*, 137 ; *affirmed in Moss* agt.
*McCullough*, 7 *Barb.*, 297 ; *American Ins. Co.* agt. *Oakley*,
9 *Paige's Ch. R.*, 496 ; *Ridgeway* agt. *The Farmers' Bank
of Bucks Co.*, 12 *Serg. & Rawle* [*Penn.*] *R.*, 256 ; *Story on
Agency*, 239 ; *Angel & Ames on Corp.*, 297, *note*).    The
ratification of an unauthorized act of its agent by a corpora-
tion is equivalent to a previous authority as in case of natural
persons (*Fleckner* agt. *U. S. Bank*, 8 *Wheat. R.*, 363, *per*
STORY, *J. ;* 5 *Hill*, 137 ; 1 *Keys*, 216 ; *Essex Turnpike Co.*
agt. *Collins*, 8 *Mass. R.*, 299 ; 22 *N. Y. R.*, 494 ; 34 *How.
Pr. R.*, 136).    Thus, conceding that defendant was not orig-
inally bound by the contract of its committee, yet its subse-
quent acts, in taking possession of the property and persisting
in the right to hold the same, after notice of plaintiff's con-
tract, is a ratification of the contract, and binds defendant to
pay the plaintiff's claim for the work, labor and materials in
question.    The principal is deemed to have ratified a breach
of instructions on the part of his agent if he do not dissent

within a reasonable time after notice (*Russell* agt. *Witmore*, 3 *N. Y. Leg. Obs.*, 318 ; *Vianna* agt. *Barclay*, 3 *Cow.*, 281 ; *Johnson* agt. *Jones*, 4 *Barb.*, 369 ; *Berwick* agt. *Dusenbury*, 2 *Daly*, 107 ; 32 *How. Pr. R.*, 348).

VII. The defendant having received and enjoyed the benefits of the contract of its committee, is bound by it. It thus becomes wholly immaterial whether the contract was authorized or not. The same rule concludes defendant as a natural person. It cannot retain the property and yet evade payment for the same. The defendant has received the consideration of plaintiff's contract and has not restored or offered to restore it ; and it cannot restore, nor would restoration do complete justice to plaintiff — hence defendant is bound to pay for the consideration received. "Where a corporation has received the consideration of a contract, and a restoration will not do complete justice, the other party may recover upon the contract although it was unauthorized " (*Russell* agt. *Michigan Southern and Northern Ind. R. R. Co.*, 22 *N. Y. R.*, 258; *see, also, DeGraff* agt. *American Linen Thread Co.*, 21 *N. Y. R.*, 124 ; *reversing* 24 *Barb.*, 375 ; 20 *Wend.*, 91 ; *Smith* agt. *Lowe*, 21 *N. Y. R.*, 296 ; 22 *Wend.*, 348 ; 16 *How.*, 36 ; 12 *John.*, 227 ; 9 *Paige*, 496 ; 6 *N. Y. Leg. Obs.*, 160 ; 17 *N. Y. R.*, 449, 584 ; 4 *Cow.*, 645 ; 4 *E. D. Smith*, 413 ; *Hooker* agt. *Eagle Bank of Rochester*, 30 *N. Y. R.*, 83 ; *Angel & Ames on Corp.*, secs. 7, 8; *Woodruff* agt. *Peterson*, 51 *Barb.*, 252; *Reed* agt. *Randall*, 39 *N. Y. R.*, 358). One who has in good faith dealt with a corporation, discounted paper, &c., can recover from it (*Mechanics' Banking Asso.* agt. *N. Y. Saugerties White Lead Co.*, 35 *N. Y. R.*, 505 ; *affirming* 23 *How. Pr. R.*, 74, *and* 29 *How.*, 509). It was held in the case of *The Vestry of St. Luke's Church* agt. *Matthews* (4 *Diss.* [*S. C.*], *Ch. R.*, 587), that "where a clergyman entered into a contract with a vestry who were not legally elected, but were yet a vestry *de facto*, for a year's service, in ignorance of the illegality of the election and without collusion ; that having

performed the service he was entitled to recover of the church upon his contract." Defendant having received the benefit of the contract must pay upon the *quantum meruit*, or upon the *quantum valebout* (*Brady* agt. *The Mayor, &c., opinion by* DENIO, *J.*, 20 *N. Y. R.*, 319; 28 *How. Pr. R.*, 214; 18 *Abbt.*, 369; 3 *Robt.*, 128; *affirmed in court of appeals*, 33 *N. Y. R.*, 309). Upon every principle of justice, equity and right the plaintiff should recover of the defendant in this action.

VIII. The referee holds and decides that the power to purchase furniture could not be delegated to the committee, because the discretion, as to the expense to be incurred as well as the articles to be procured, was intended to be conferred by said common council; and in his opinion he cites *Thompson* agt. *Schermerhorn* (6 *N. Y. R.*, 92) in support of his position and as decisive of the question. We submit the case cited has no application whatever to the case at bar. In that case the court held: "A municipal corporation in its ordinance requiring the leveling and paving of streets must conform strictly to the provisions of the statute giving it power to pass such ordinance, or its proceedings will be void," and the reversal of the judgment in that case was upon this distinct ground. The learned judge says in his opinion (*page* 96): "I am satisfied that the legislature intended to place the responsibility of determining the mode and manner, or, in other words, the plan of the improvement, upon the common council. The trust is an important and delicate one, as the expenses of the improvement are, by the statute, to be paid by the owners of the property in front of which it is made." This decision turned on the proper construction of the 34th section of " an act relative to the city of Schenectady " (*Laws of* 1833, *page* 457), which authorized the common council of said city to make " by-laws and ordinances ordering and directing any of the streets to be pitched, leveled, paved, flagged, &c.," and the court properly held that inasmuch as the expenses of the improvements were to be paid by direct

taxation against the owners of the property in front of which the same were to be made, the express terms of the statute must be strictly complied with ; and as the statute expressly required the common council themselves to " determine the manner in which the improvement should be made, they could not delegate that power to any officer or committee of the corporation." The referee in this case failed to see the plain distinction between the case at bar, where the common council delegates to a committee the power to " procure necessary furniture " for their use, to be paid for out of the general fund, and where the power of special and local taxation is sought to be delegated to officers of a corporation, or to a committee in direct and palpable violation of the express language of the statute, as in the case above cited.

*W. F. Porter* and *Charles H. Watts*, for respondent.

I. This action is brought upon express contract, alleged to have been made by plaintiff with defendant, and unless a valid contract is proven, the action cannot be maintained.   1. It is submitted that upon the proofs no .contract between plaintiff and defendant has been 'proven, not even the semblance of one, and the referee so finds.   A contrary finding would have been without evidence to sustain it.   2. The plaintiff relied upon and attempted to prove an express contract, and made no claim, either upon the trial or argument, to any right to recover upon any implied liability.

II. The defendant could contract only by or through its common council.   The charter of defendant expressly provides that defendant shall contract only in this way, and in legal effect prohibits it from ;contracting in any other way, and this is the rule with all municipal corporations (*Laws of* 1869, *vol.* 2, *page* 1701).   1. The plaintiff does not allege, prove or claim to have made any contract with defendant, but alleges that he has made a contract with a committee of defendant; none having been made with the defendant

Edwards agt. City of Watertown.

through its common council, none can exist valid and binding on defendant.

III. It is claimed on the part of the plaintiff, that he made a contract for the performance of the work and furnishing of the materials with a committee, alleged to have been appointed by the defendant, consisting of three members of the common council and the recorder of defendant; that said committee was legally appointed; that the common council had authority thus to delegate its powers, and that the committee had power to, and did make a contract with plaintiff binding on defendant. This proposition we dispute, both upon the facts and as matter of law. 1. Upon the undisputed evidence in this case the common council did not appoint such committee. The evidence is, that such committee was appointed by the mayor without any authority from the common council. The mayor as such had no more power to do this than any other person; the appointment was, therefore, void. 2. Certainly he had no power, not even with the assent of the common council, to appoint, as one of such committee, the recorder, who was not a member of the common council.

IV. The common council has no legal right to delegate their powers or duties to others. It is a well settled principle that public power or trusts devolved by law upon a common council or governing body cannot be delegated to others. Such duties require the exercise of discretion and judgment, and the body or officers intrusted with it must discharge it themselves. The committee, therefore, could not by any act of theirs bind the defendant (*Dillon on Mun. Corp.*, sec. 60, 618; *Cooley's Const. Lim.*, sec. 204; *Lord* agt. *City of Olonto*, 47 *Wis. R.*, 500; *Powell* agt. *Tuttle*, 3 *Comstock*, 396; *Thompson* agt. *Schermerhorn*, 6 *N. Y. R.*, 92; *City of Troy* agt. *Winters*, 2 *Hun*, 63; *People ex rel.* agt. *Davis*, 15 *Hun*, 209; *Birdsall* agt. *Clark*, 73 *N. Y. R.*, 73; *Matter of Petition of Em. I. S. B.*, 75 *N. Y. R.*, 388; *Davis* agt. *Reid*, 65 *N. Y. R.*, 566). 1. The plaintiff grounds his cause of action upon a contract

alleged by him to have been made with such committee. The contest on the trial was sharp over this question. The plaintiff relied upon such contract for a recovery, as the evidence indisputably shows. 2. The referee very wisely holds and decides as matter of law that the common council had no power to delegate its duties to a committee, and that the committee could not bind the defendant by any contract it may have attempted to make. 3. *Dillon on Municipal Corporations* (*sec.* 60) says : " The principle is a plain one that public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others. Such a delegation of power is void. Powers of this kind must be exercised in strict conformity with the charter or incorporating act." And at section 618 the same principle is reaffirmed. 4. In *Dag* agt. *Gray* (4 *Cushing*, 433) ; the charter of the city prohibited moving buildings through the streets, without license from the mayor and aldermen. Authority to grant such license was delegated by the aldermen to the mayor ; held void and no protection to the mayor ; that such power could not be delegated. 5. In *Thompson* agt. *Schermerhorn* (6 *N. Y. R.*, 92) ; the common council in this case were authorized by the charter of the city of Schenectady to pave, level and flag the streets of the city under the superintendence of the city superintendent. The common council made an ordinance directing this work to be done under the direction of its committee on roads. Held, such ordinance was void ; that the council could not delegate its powers to any officer or committee of the corporation. 6. *Birdsall* agt. *Clark* (79 *N. Y. R.*, 73). In this case the common council of the city of Binghamton were empowered by the charter of the city to require the building and maintaining of sidewalks at the expense of the owners of adjoining premises ; the council by resolution directed the superintendent of streets to cause the work to be done when the owners neglected to do so. In an action to restrain the super-

intendent from doing the work, held, the action maintainable and resolution void, on the ground that such duties could not be delegated to another. In this case *Thompson* agt. *Schermerhorn* (*supra*) is cited and approved. 7. *Matter of Petition of Emigrants' Savings Bank to vacate assessment, &c.* (75 *N. Y. R.*, 388). In this case the common council of the city of New York were authorized to improve certain streets and levy an assessment to defray such expenditure. The council, by an ordinance directed the "commissioner of public works" to do such work. Work was done and assessment made. Petitioner takes proceedings to vacate assessment. Held, assessment void; the council had no power to delegate their duties. In this case *Thompson* agt. *Schermerhorn* and *Birdsall* agt. *Clark* are cited and approved. In each of the cases cited, the duties attempted to be delegated were not *ultra vires*, but were devolved upon the governing body by law, and in most of the cases the work was done, the benefit derived from it received and enjoyed, yet the authority conferred being void, no legal liability was created. An individual contracting with public officers must take notice of their powers; he is charged with knowledge of the law, and makes a contract in violation of law at his own risk (*Parr* agt. *Village of Greenbush*, 72 *N. Y. R.*, 462).

V. Within all the authorities there was no power to appoint as a member of the committee a person not a member of their body. The recorder of the city could not be clothed with power to discharge the duties of the legislative and executive departments of the city government. Such a case is without precedent (*Day* agt. *Green*, 4 *Cushing*, 433).

VI. If the common council had power to delegate the performance of its duties to others, and if such committee were legally appointed, the delegation by the committee of the authority with which they were clothed to one of their number, as was done in this case, was illegal and void. If the committee were clothed with any power it was not a mere ministerial duty, but involved the exercise of their judgment

and discretion, and could not be delegated. Upon the undisputed evidence in this case the members of *the committee, without any meeting for that purpose, or action in concert, delegated their duties to Ainsworth. The contract, if any, was made by him alone; all the work done, or directed to be performed, was authorized by him; manifestly such contract is void and cannot be enforced against defendant (*Dillon on Mun. Corp.*, secs. 221 *to* 228; *Downing* agt. *Rugar*, 21 *Wend.*, 178; *Keeler* agt. *Frost*, 22 *Barb.*, 400; *Powell* agt. *Tuttle*, 3 *Comstock*, 396; *City of Troy* agt. *Winters*, 2 *Hun*, 63; *Cook* agt. *Ward*, 20 *Moak's Eng. R.*, 5, 14).

VII. There can be no recovery upon a *quantum meruit* or implied liability, said to have been created against defendant, neither upon the law or facts in this case, and the referee so finds. The contract being absolutely void, no obligation was created against defendant; neither can one be implied under such a contract. It is an elementary principle of the law of contracts, that in all cases the assent of the contracting parties must be shown. In an express contract by an express promise; in an implied contract there must be some act from which their assent can be implied (*Brady* agt. *The Mayor, &c.*, 20 *N. Y. R.*, 312; *Bonesteel* agt. *The Mayor, &c.*, 22 *N. Y. R.*, 162; *Cowen* agt. *Village of West Troy*, 43 *Barb.*, 48; *Donavan* agt. *The Mayor, &c.*, 33 *N. Y. R.*, 291; *City of Troy* agt. *Winters*, 2 *Hun*, 63; *Barnes* agt. *The Mayor, &c.*, 5 *Sup. Ct. R.*, 371; *McDonald* agt. *The Mayor, &c.*, 68 *N. Y. R.*, 23; *Parr* agt. *Village of Greenbush*, 72 *N. Y. R.*, 463; *Francis* agt. *City of Troy*, 74 *N. Y. R.*, 338; 75 *N. Y. R.*, 65; 2 *Clifford R.*, 590; 77 *N. Y. R.*, 130). The evidence shows that the common council of defendant had no knowledge of the agreement plaintiff alleges he made with the committee, or of the fact that plaintiff had been promised compensation for the work, &c., aside from the contemplated rent of $400 per year, till long after the work was completed and after the execution of the written lease of the premises in question.

VIII. The contract being void there could be no ratification; and if there could be, there was none in this case. The referee expressly finds there was none, and such finding is abundantly supported by the evidence; and there can be no ratification in any case, unless the party claimed to have ratified, had full knowledge of all the facts (*Rowen* agt. *Hyatt*, 45 *N. Y. R.*, 138; *Lyman* agt. *Wykoff*, 10 *N. Y. R.*, 224; *Nixon* agt. *Polman*, 8 *N. Y. R.*, 398; *Cuyler* agt. *Mansfield*, 5 *Hun*, 559; *Dickinson* agt. *City of Poughkeepsie*, 75 *N. Y. R.*, 65).

IX. There is another principle which effectually precludes the plaintiff from recovery in this action, and that is the principle of estoppel; and the evidence in this case warrants the judicial application of the equities of that rule to the plaintiff in its superlative sense; he should be precluded from denying what his declarations and conduct have asserted (*Tilden* agt. *Nelson*, 27 *Barb.*, 595; *Dougherty* agt. *Topping*, 4 *Paige*, 94; *Simmons* agt. *McLaughlin*, 35 *N. Y. R.*, 647; *Edgarson* agt. *Thomas*, 9 *N. Y. R.*, 40; *Dezell* agt. *Odell*, 3 *Hill*, 215; *Blair* agt. *Wait*, 69 *N. Y. R.*, 113; *Smith* agt. *Rathbun*, 75 *N. Y. R.*, 122).

SMITH, J. — The action was brought to recover for work and labor performed, materials furnished and money paid out for the defendant, a municipal corporation, in fitting up certain rooms leased by the defendant, and furnishing them with fixtures and furniture for the use of the defendant's officers.

The referee found that at a regular meeting of the common council of the defendant, held on the 22d September, 1874, it was resolved to take a lease of the rooms in question for five years, with a privilege of ten years if desired, at a rent of $400 a year, and at the same meeting the mayor of the city, as the presiding officer of the common council, appointed a committee consisting of three members of the common council and the recorder of the city, to arrange the

rooms and procure the necessary furniture. The action of the mayor was approved by the common council. The referee also found that said committee, after their appointment, met informally, and requested the plaintiff to do the work and furnish the materials for which the action is brought. The plaintiff was the agent of the owners of the rooms, and as such had negotiated with the defendant's officers for the lease of the rooms. The referee found that the committee promised the plaintiff that he should be paid for such services and materials aside from the $400 a year which his principals were to receive for the rent of the rooms. The plaintiff thereupon caused the work to be done and the materials to be furnished, and the city officers took possession of the rooms so furnished in the latter part of November, 1874. On the 9th December, 1874, the common council held a meeting in said rooms, and by resolution accepted them as fitted up by the plaintiff, and authorized a lease to be taken in accordance with the terms of the previous resolution, and such lease was afterwards executed on the part of the owners and lessors by the plaintiff as their agent. The referee found that the fact that the committee had promised the plaintiff compensation, aside from the contemplated rent of $400 a year, was not made known to the common council until after the execution of the lease.

The referee held, among other conclusions of law, that the committee had no power to bind the defendant by their contract, and that the plaintiff, by his dealings with the defendant on behalf of his principals, is estopped from recovering upon his claim.

It is contended in behalf of the defendant that the common council could not delegate to a committee power to procure the necessary furniture for the rooms; that the power involved the exercise of discretion, as to the cost especially, and could not be delegated. It is a plain principle that public powers or trusts devolved by law upon the governing body of a municipal corporation, to be exercised by it when, and

in such manner as it shall judge best, cannot be delegated to others.   But it is not clear that the principle applies to this case.   The distinction is between acts *quasi* judicial, or involving discretion, and those which are merely ministerial. The cases cited by the respondent's counsel are of the former class.   In most of them the governing body undertook to delegate a public trust by a general grant of power.   Thus in *Day* agt. *Green* (4 *Cush.*, 433) the aldermen of a city delegated power to the mayor to grant licenses to move buildings through the streets, and in *Thompson* agt. *Schermerhorn* (6 *N. Y.*, 92) the common council of the city of Schenectady, being authorized to pave, level and flag the streets of the city, under the superintendence of the city superintendent, made an ordinance directing the work to be done under the direction of its committee on roads (*Birdsall* agt. *Clark*, 73 *N. Y.*, 73).   *In Matter of Petition of Emigrants' Savings Bank* (75 *N. Y.*, 388), and *People ex rel.* agt. *Davis* (15 *Hun*, 209) are of the like nature.   To apply the doctrine of these and numerous other concurrent decisions to the present case would be to hold that it was necessary for the common council, as a body, to buy or contract for the making of each article of furniture for the rooms in question, in order to bind the defendant.   We do not think the case is within the doctrine above stated.   The power conferred was limited to the procuring of necessary furniture for the rooms in question.   In a certain sense the purchase of the most common and trivial article involves the exercise of judgment and discretion, as to cost, at least.   But it will hardly be claimed that the common council could not authorize one of its attendants to buy a broom to sweep the council chamber, or its clerk to purchase necessary stationery for the use of its members.   To question such authority would be to deny, as was said by Cowen, J., in *Bank* agt. *Norton* (1 *Hill*, 505), "that the general agent of a mercantile firm could retain a carpenter to make a box, or a cooper to make a cask."   No question is made by the defendant as to the furni-

ture procured being necessary. None as to its being suitable and well made. None as to its costs or its value. But it is claimed that it was to be included in the rent. A sufficient answer to that position is, that when the common council voted to rent the rooms of the plaintiff's agents at $400 a year, they at the same time appointed a committee to arrange the rooms and procure the necessary furniture. That implies very clearly that the common council understood that they were to furnish the rooms at their own expense in addition to paying the rent. The committee was appointed, not to superintend the furnishing of the rooms, but to *procure* the furniture. What need of that action if it was to be procured by the lessors ? In this view of the case the acceptance of the furnished rooms by the common council was a ratification of the action of the committee.

It is urged by the respondent's counsel that the common council had no authority to appoint upon the committee a person not a member of their body. The position is untenable.

It is also insisted that the committee did not meet, and all its members did not act, but confided the matter mainly to one of their members. The referee finds, on the contrary, that the committee met and requested the plaintiff to do the work. As the defendants do not appeal, they cannot question the sufficiency of the evidence to support the finding.

If the views above stated are correct, the plaintiff is not estopped from recovering by his action respecting the lease. The defendant's committee well knew that the furniture was provided by the plaintiff and not by his principals, and that it was to be paid for, aside from the rent of the rooms, and their knowledge on that subject is to be treated as the knowledge of their principal.

The judgment should be reversed and a new trial granted before another referee, costs to abide event.

Talcott, P. J., and Hardin, J., concurred.

Ordered accordingly.